Miyoko Sakashita (Cal. Bar # 239639)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7108
Fax: (510) 844-7150
Email: miyoko@biologicaldiversity.org

Lalli Venkatakrishnan (Cal. Bar # 323747)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: (510) 676-0348
Fax: (510) 844-7150
Email: lvenkat@biologicaldiversity.org

*Attorneys for Plaintiffs Center for Biological Diversity and Turtle Island Restoration Network*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, a non-profit organization, and TURTLE ISLAND RESTORATION NETWORK, a non-profit organization,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT DE LA VEGA,[1] Acting Secretary, United States Department of Interior, and UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>Defendants. | Civ. No: 3:21-cv-1182<br><br>**COMPLAINT**<br><br>(Marine Mammal Protection Act, 16 U.S.C. § 1361 *et seq.*) |

---

[1] Pursuant to Fed. R. Civ. P. 25(d), David Bernhardt's successor is automatically substituted as a party when Mr. Bernhardt ceases to hold office as Secretary of the U.S. Department of Interior, and any misnomer not affecting the parties' substantial rights must be disregarded.

## INTRODUCTION

1. This is an action challenging the failure of Defendants Scott de la Vega, Acting Secretary of the Interior, and the United States Fish and Wildlife Service (collectively "the Service") to comply with their non-discretionary obligations under the Marine Mammal Protection Act ("MMPA"). 16 U.S.C. § 1361, *et seq*. Specifically, the Service has failed to issue updated stock assessment reports for marine mammals under its jurisdiction—sea otters, polar bears, walruses, and manatees—within the timeframes mandated by the statute. 16 U.S.C. § 1386(c).

2. To ensure the conservation of marine mammals, the MMPA requires that the Service prepare stock assessments for marine mammal populations under its jurisdiction. These stock assessment reports provide valuable information on the range, population, threats, and status of each marine mammal population or stock. These reports have actual legal effect as they (1) set acceptable levels of human-caused serious injury and mortality to marine mammal populations and (2) guide management actions for commercial fisheries, oil and gas activities, military activities, coastal development, and other activities that may harm these marine mammals.

3. Because good decision-making requires accurate information, the MMPA further requires that the Service update stock assessment reports annually for certain vulnerable stocks and once every three years for all other marine mammal stocks. 16 U.S.C. § 1386(c).

4. However, the Service has not updated stock assessment reports as section 117(c) of the MMPA requires. 16 U.S.C. § 1386(c). For some species, the stock assessments have not been revised *for more than a decade*. During this time, significant new information about the status of these marine mammal populations has become available. For example, changes in climate conditions have led to severe kelp die-off that has impacted sea otters in California, new and increased oil and gas activity has impacted sea otters in Alaska, global warming has caused the loss of sea ice upon which polar bears and walruses depend, and watercraft related mortality remains the leading source of human-caused mortality for manatees in Florida.

5. The Service's failure to update the stock assessment reports for sea otters, polar

1
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

bears, walruses, and manatees has resulted in agency decision-making that ignores the best available information on the status of these vulnerable marine mammal species and deprives them of protections vital to their conservation.

6. Plaintiffs seek declaratory and injunctive relief requiring the Service to comply with its nondiscretionary duty under the MMPA to review, revise, and make available to the public updated stock assessment reports by a date certain.

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

7. This Court has jurisdiction over this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (action against the United States), 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his or her duty), and 28 U.S.C. §§ 2201–2202 (power to issue declaratory judgements in cases of actual controversy). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

8. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because at least one plaintiff resides in this judicial district and the violations alleged in this Complaint address a species, the California sea otter, that resides in this judicial district.

9. A substantial part of the events and omissions giving rise to the claims in this case occurred in the counties of San Francisco, Santa Cruz, and Monterey. Accordingly, assignment to the Oakland, San Francisco, or San Jose Division is proper pursuant to Civil Local Rule 3-2(c)–(e).

**PARTIES**

10. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, nonprofit conservation organization incorporated in California, with an office in Oakland, dedicated to the preservation of biodiversity, native species, and ecosystems. The Center's Oceans Program focuses on the protection of marine species and their ocean habitats, including significant efforts to ensure the conservation of marine mammals. The Center has worked extensively to protect the polar bear, sea otter, walrus, and manatee from threats to their survival and recovery; this includes, *inter alia,* efforts to ensure Endangered Species Act protections for polar bears and sea

otters in Alaska, oversight of offshore oil and gas activities affecting Pacific walruses, and actions to reduce fisheries' bycatch of California sea otters and to conserve manatees.

11. The Center has over 84,000 members, with members who reside in and/or visit the coastal areas of California, Florida, Puerto Rico, and Alaska and adjoining marine waters where the marine mammals at issue in this case occur. The Center's members and staff use these ocean and coastal areas for research, aesthetic enjoyment, observation, and other recreational, scientific, and educational activities. The Center, its staff, and its members also regularly review scientific information about marine mammals and regularly comment on actions affecting marine mammals, including draft stock assessment reports.

12. Center members and staff have researched, observed, photographed, enjoyed the habitat of, and sought protection for the polar bear, walrus, and sea otter in Alaska. Center members and staff have also regularly visited the shores and waters of California to observe, study, and enjoy California sea otters. Center members and staff have visited the habitat of the Antillean and Florida manatees, sought to observe manatees, and enjoyed manatees in their marine environment. Center members will continue to visit those areas in the future to appreciate these marine mammals and their ocean and coastal environment. Center members and staff derive scientific, recreational, conservation, and aesthetic benefits from the existence of these marine mammals in the wild. The Center and its members also derive benefits from information about and opportunities for public participation concerning marine mammals. The Center brings this action on behalf of itself and its adversely affected members and staff.

13. Plaintiff TURTLE ISLAND RESTORATION NETWORK ("TIRN") is a non-profit corporation committed to the study, protection, enhancement, conservation, and preservation of the world's marine and terrestrial ecosystems and the wildlife that inhabit the oceans, including marine mammals. TIRN, a California corporation with its principal place of business in Marin County, California, has approximately 114,000 supporters throughout the United States and the world, including research biologists, eco-tour operations, and professional photographers and videographers, all of whom rely on healthy populations of marine mammals to conduct their business. TIRN's members and staff regularly use the coastal waters of the

western United States, Alaska, Florida, and Puerto Rico for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities. TIRN's members and staff spend time on the shores or in the waters of these areas engaging in a number of wildlife-viewing activities, including swimming, snorkeling, kayaking, scuba diving, and wildlife watching. TIRN's members and staff intend to continue to study, visit, and observe—or attempt to study, visit, and observe—these species in the future. TIRN brings this action on behalf of itself and its adversely affected members and staff.

14. Plaintiffs' interests are injured by the Service's failures to review and revise stock assessment reports for marine mammals under its jurisdiction as required by the MMPA.

15. Plaintiffs are adversely affected by the Service's failure to review and revise stock assessment reports for sea otter, polar bear, walrus, and manatee stocks. Outdated stock assessments result in management decisions that are less informed and often less protective of these marine mammal populations than they would be if decision-making agencies were armed with the most recent information. Because many of these stocks have either declined since their most recent stock assessment or are now subject to newly identified and often greater threats, the lack of updated stock assessments increases the risks to these species. Such outdated stock assessments result in activities being permitted that adversely affect the survival and recovery of these species and increase the chances that population declines and other adverse impacts to these animals will occur but will go unnoticed and/or unaddressed. Harm to the species and stocks in which Plaintiffs have an interest in harms Plaintiffs and their members by reducing the likelihood that Plaintiffs and their members will be able to continue to observe, research, and enjoy these marine mammals in their natural environment.

16. Plaintiffs are also suffering procedural and informational injuries resulting from the Service's failure to review and revise marine mammal stock assessment reports. The MMPA requires that the Service review and revise stock assessment reports to ensure that the authorized take of each stock does not exceed the levels that the population can sustain. It also requires updates to ensure the assessments accurately reflect factors that may be impeding the recovery of a stock, including effects on its habitat and prey. Since the population of marine mammal stocks

4
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

vary over time, as do the extent and types of threats and stressors affecting the stocks, the MMPA requirement to review and revise stock assessment reports aims to ensure that marine mammals are not adversely affected by decisions based on obsolete information. Therefore, because Plaintiffs have concrete interests in ensuring up-to-date stock assessments, Plaintiffs' interests are adversely affected by the Service's failure to fulfill its procedural duties under the MMPA to timely update the stock assessment reports.

17. Plaintiffs are also harmed by the Service's failure to prepare these stock assessment reports because they are unable to use the information contained in the report and are unable to participate in the public comment process. The procedural requirements in the MMPA to revise the stock assessment reports were designed to promote public participation and information, as demonstrated by the public comment requirement. As Plaintiffs and their members research and promote conservation of marine mammals, this information and participation is useful to Plaintiffs to carry out their organizational missions. The Service's inaction adversely affects Plaintiffs' and their member's informational and procedural interests in the reports.

18. Plaintiffs' injuries can be redressed by declaratory and injunctive relief. An order compelling the stock assessment reports by a date certain will reduce the likelihood that excessive take of marine mammals will be authorized. The Service can revise the stock assessment reports and, as a result, authorized take will better reflect the limits that the stocks can sustain at this time. Therefore, it is less likely that the marine mammals at issue will be adversely affected. Moreover, requiring preparation of the reports will provide Plaintiffs access to the information in the stock assessments and an opportunity to participate by commenting on the reports.

19. Defendant SCOTT DE LA VEGA, United States Acting Secretary of the Interior, is the highest ranking official within the Department of the Interior and, in that capacity, has ultimate responsibility for the administration and implementation of the MMPA with regard to sea otter, polar bear, walrus, and manatee stocks, and for compliance with all other federal laws applicable to the Department of the Interior. He is sued in his official capacity. Secretary de la

5
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Vega has the authority and ability to remedy the harm inflicted by Defendants' actions.

20. Defendant UNITED STATES FISH AND WILDLIFE SERVICE ("the Service") is a federal agency within the Department of the Interior authorized and required by law to protect and manage the fish, wildlife, and native plant resources of the United States, including implementing and enforcing the MMPA. The Secretary of the Interior delegated authority to the Service to implement the MMPA. The Service has failed to review and revise stock assessment reports for sea otter, polar bear, walrus, and manatee stocks. The Service has the authority and ability to remedy the harm inflicted by Defendants' actions.

## STATUTORY FRAMEWORK

### Marine Mammal Protection Act

21. Congress enacted the MMPA to ensure the protection of marine mammals because of concern that "certain species and population stocks of marine mammals are, or may be, in danger of extinction or depletion as a result of man's activities." 16 U.S.C. § 1361(1). The overriding intent of the MMPA is that "such species and population stocks should not be permitted to diminish beyond the point at which they cease to be a significant functioning element in the ecosystem of which they are a part, and, consistent with this major objective, they should not be permitted to diminish below their optimum sustainable population." 16 U.S.C. § 1361(2).

22. The primary mechanism by which the MMPA protects marine mammals is through the implementation of a "moratorium on taking" of marine mammals. 16 U.S.C. § 1371(a). "Take" means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13).

23. The Service may issue permits and authorizations that allow the taking of marine mammals for certain purposes. 16 U.S.C. §§ 1371, 1374. Additionally, the MMPA includes a regime to regulate and authorize limited incidental take of marine mammals by commercial fisheries. 16 U.S.C. § 1387.

24. The Service and the Secretary of Commerce (through the National Marine Fisheries Service) split implementation of the MMPA. The MMPA generally assigns

1  responsibility over cetaceans (whales and dolphins) and pinnipeds (seals and sea lions) to the
2  Secretary of Commerce, with the remaining marine mammal species (sea otters, polar bears,
3  walruses, and manatees) to the Service. 16 U.S.C. § 1362(12).

4      25.    The 1994 amendments to the MMPA included a requirement that the Service
5  prepare stock assessments for each marine mammal stock under its jurisdiction. 16 U.S.C.
6  § 1386. Draft stock assessments were to be prepared by August 1, 1994, submitted to a scientific
7  review group, and presented to the public for comment, with final stock assessments published
8  within 90 days. 16 U.S.C. § 1386(a)–(b).

9      26.    The MMPA further mandates that the Service must periodically update stock
10 assessment reports:

11     (1) The [Service] shall review stock assessments in accordance with this
12         subsection—
13         (A) at least annually for stocks which are specified as strategic stocks;
14         (B) at least annually for stocks for which significant new information is
15             available; and
16         (C) at least once every 3 years for all other stocks.
17     (2) If the review under paragraph (1) indicates that the status of the stock has
18         changed or can be more accurately determined, the [Service] shall revise the
19         stock assessment in accordance with subsection (b) of this section.
20 16 U.S.C. § 1386(c). In turn, subsection (b) provides for public notice and comment procedures
21 for stock assessments. 16 U.S.C. § 1386(b).

22     27.    A stock assessment must be based on the "best scientific information available."
23 16 U.S.C. § 1386. It shall include, *inter alia*, the geographic range of the stock, minimum
24 population estimate, productivity rates, population trend, estimates of the human-caused
25 mortality and serious injury to the stock, commercial fisheries interacting with the stock, a status
26 category, and the potential biological removal level. 16 U.S.C. § 1386(a). For strategic stocks,
27 the assessments must also include "factors that may be causing a decline or impeding recovery of
28 the stock, including effects on marine mammal habitat and prey." 16 U.S.C. § 1386(a)(3).

28. A "strategic stock" means a marine mammal stock "(A) for which the level of human-caused mortality exceeds the potential biological removal level;" (B) is declining and likely to be listed under the Endangered Species Act; or (C) is listed under the Endangered Species Act or is below its optimum sustainable population. 16 U.S.C. § 1362(1), (19).

29. The potential biological removal level is the "maximum number of animals, not including natural mortalities, that may be removed from a marine mammal stock while allowing that stock to reach or maintain its optimum sustainable population." 16 U.S.C. § 1362(20). The Service then uses the potential biological removal level as a factor when authorizing take of marine mammals. The potential biological removal level is also used in take reduction planning for fisheries.

30. Therefore, the stock assessment reports provide important information and form the basis of the Service's decisions authorizing the take of marine mammals. *See e.g.,* Marine Mammals; Incidental Take During Specified Activities; Proposed Rule, 84 Fed. Reg. 79,082 (Dec. 8, 2020) (proposed incidental harassment authorization for take of polar bears during seismic surveys and associated activities in the Arctic National Wildlife Refuge); Marine Mammals; Incidental Take During Specified Activities; Proposed Rule, 84 Fed. Reg. 32,932 (July 10, 2019) (proposed incidental harassment authorization for take of southeast Alaska stock of northern sea otters during pile driving activities in Sitka Sound and Port Frederick, Alaska); Marine Mammals; Incidental Take During Specified Activities; Final Rule, 81 Fed. Reg. 52,276 (Aug. 5, 2016) (regulations for incidental take of walrus and polar bear during oil and gas operations in the Beaufort Sea and adjacent northern coast of Alaska); Marine Mammals; Incidental Take During Specified Activities; Proposed Rule, 72 Fed. Reg. 30,670 (June 1, 2007) (regulations for incidental take of walrus and polar bears during oil and gas exploration in the Chukchi Sea); Notice of Receipt of Applications and Proposed Incidental Harassment Authorization, 71 Fed. Reg. 26,770 (May 8, 2006); 71 Fed. Reg. 35,928 (June 22, 2006) (applications to take walrus and polar bear incidental to oil and gas seismic operations in the Chukchi Sea); Marine Mammals; Incidental Take During Specified Activities; Proposed Rule Withdrawal, 68 Fed. Reg. 24,700 (May 8, 2003) (denial of incidental take of Florida manatees

1  for watercraft activities because of new information concerning manatee stocks).  The stock
2  assessment reports may also provide important information for other government decisions
3  affecting marine mammals and their management.

4  31. In sum, the MMPA places a nondiscretionary duty on the Service to review, and if
5  necessary, revise the stock assessments at least annually for strategic stocks and for stocks for
6  which there is significant new information, and at least every three years for all other stocks.  16
7  U.S.C. § 1386(c).

**Administrative Procedure Act**

32. The Administrative Procedure Act provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof."  5 U.S.C. § 702.  The statute specifies that agency action includes an agency's "failure to act."  5 U.S.C. § 551(13).

33. It further requires the reviewing court to "compel agency action unlawfully withheld or unreasonably delayed;" and "hold unlawful and set aside agency action, findings, and conclusions found to be: (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [and] without observance of procedure required by law."  5 U.S.C. § 706.

**FACTUAL BACKGROUND**

34. The Service is required to publish stock assessment reports for sea otter, polar bear, Pacific walrus, and manatee stocks (see Table 1).

**TABLE 1**

| Marine Mammal | Subspecies/Stock | Category | Date of Last SAR |
|---|---|---|---|
| Sea otter | Northern sea otter - Southwest Alaska (*Enhydra lutris kenyoni*) | Strategic | 04/21/2014 |
| Sea otter | Northern sea otter - Southcentral Alaska (*Enhydra lutris kenyoni*) | Non-Strategic | 04/21/2014 |
| Sea otter | Northern sea otter - Southeast Alaska (*Enhydra lutris kenyoni*) | Non-Strategic | 04/21/2014 |

9
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| Sea otter | Southern sea otter (*Enhydra lutris nereis*) | Strategic | 08/28/2017 |
|---|---|---|---|
| Polar Bear | Polar bear - Chukchi/Bering Seas (*Ursus maritimus*) | Strategic | 12/30/2009 |
| Polar Bear | Polar bear - Southern Beaufort Sea (*Ursus maritimus*) | Strategic | 12/30/2009 |
| West Indian Manatee | Florida Manatee (*Trichechus manatus latirostris*) | Strategic | 6/19/2017 |
| West Indian Manatee | Antillean manatee - Puerto Rico (*Trichechus manatus manatus*) | Strategic | 01/23/2014 |
| Pacific Walrus | Pacific walrus (*Odobenus rosmarus divergens*) | Strategic | 04/21/2014 |

35. The southwest Alaska northern sea otter stock is a strategic stock under the MMPA. The Service must annually review and/or revise the stock assessment for this stock. The southeast and southcentral Alaska northern sea otter stocks are non-strategic stocks under the MMPA. The Service must review and/or revise the stock assessments for these stocks at least once every three years. The Service has failed to publish revised stock assessment reports since 2014 for northern sea otter stocks in southwestern, southcentral, and southeastern Alaska. 79 Fed. Reg. 22,154 (Apr. 21, 2014). The Service has not updated the stock assessments for northern sea otters in southwestern, southcentral, and southeastern Alaska in over six years.

36. The southern sea otter stock is a strategic stock under the MMPA. The Service must annually review and/or revise the stock assessment for this stock. In 2020, the Service published a notice of the availability of a *draft* revised marine mammal stock assessment report for southern sea otter in California. 85 Fed. Reg. 4696 (Jan. 27, 2020). The Service has not yet finalized this report.

37. The Chukchi/Bering Seas and Southern Beaufort Sea polar bear stocks are both strategic stocks under the MMPA. The Service must annually review and/or revise the stock assessments for these stocks. In 2017, the Service published a notice of the availability of *draft* revised marine mammal stock assessment reports for both the Chukchi/Bering Seas and Southern

1  Beaufort Sea polar bear stocks.  82 Fed. Reg. 28,526 (Sept. 20, 2017).  The Service never
2  finalized these reports.

3   38. The Pacific walrus stock is a strategic stock under the MMPA.  The Service must
4  annually review and/or revise the stock assessment for this stock.  The Service has failed to
5  publish a revised stock assessment report since 2014 for the Pacific walrus stock.  79 Fed. Reg.
6  22,154 (Apr. 21, 2014).  The Service has not updated the Pacific walrus stock assessment in over
7  six years.

8   39. Both the Florida manatee and Antillean manatee stocks are strategic stocks under
9  the MMPA.  The Service must annually review and/or revise the stock assessments for these
10 stocks.  The Service has failed to publish revised stock assessment reports since 2014 for the
11 Florida and Antillean manatee stocks.  79 Fed. Reg. 3856 (Jan. 23, 2014).  The Service has not
12 updated the Florida and Antillean manatee stock assessments in over six years.

13  40. The status of each of these stocks has changed since the stock assessment reports
14 were last revised.  Additionally, new information is available concerning each stock that would
15 inform a more accurate stock assessment.  The Service is aware, or should be aware, that the
16 statuses of these marine mammal stocks have changed or can be more accurately determined.

17  41. There are numerous examples of changed status and new information concerning
18 each of these marine mammal stocks.

19  42. The status of the southwest, southcentral, and southeast Alaska northern sea otter
20 stocks has changed since the last stock assessment report in 2014.  For example, the Secretary of
21 the Interior has issued offshore oil and gas leases and approved seismic surveys in Alaska that
22 negatively affect northern sea otter stocks.  Additionally, new information has become available
23 regarding climate-induced changes to sea otter habitat and food availability as well as the
24 impacts of the fishing industry on food availability and sea otter mortality.  Despite this new
25 information, the Service has not updated these northern sea otter stock assessment reports in
26 more than six years.

27  43. The population status of sea otters in California has also changed since 2017.
28 Climate-change-induced impacts on food availability, fishing-gear-related mortalities, and

11
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

dramatic declines in kelp abundance and habitat have affected this sea otter stock. New data on southern sea otters prompted the Service to determine that it was appropriate to revise reports for the southern sea otter stock in California in a *draft* stock assessment report in January 2020.

44. The status of polar bear stocks has changed dramatically since 2009. New data on both polar bear stocks prompted the Service to determine in 2017 that it was appropriate to revise reports for these stocks in *draft* stock assessment reports. Polar bears face increasing and persistent threats that have changed the status of both stocks since the last published stock assessments in 2009. Completely dependent on sea ice for survival, the polar bear's habitat is melting due to increased temperatures. The Service listed the polar bear as a threatened species throughout its range in 2008 due to the threat of extinction posed by the loss of sea ice from climate change. In 2019, the National Oceanic and Atmospheric Administration released new information that Arctic sea ice has decreased in every season and every successive decade since 1979. The National Snow and Ice Data Center reported that the year 2020 was extreme for the Arctic, even compared to the past twenty years, and that the Arctic sea ice extent minimum was the second lowest in the satellite record. Polar bears are also at risk from increasing oil and gas development within their habitat. New science shows more than 60 percent of female polar bears now den on land, with that proportion likely to increase as sea ice continues to diminish. This stock is thus threatened by the opening of the Arctic National Wildlife Refuge to oil and gas exploration and development and the approval of oil and gas exploration and development in other areas on the North Slope, including the National Petroleum Reserve-Alaska.

45. The status of and available information on the Pacific walrus has also changed since 2014. New population estimates suggest that the Pacific walrus population is declining. Sea ice loss has affected the ice-dependent Pacific walrus stock, and recent studies demonstrate that melting sea ice will continue to have increasingly detrimental consequences to the Pacific walrus. Recently, scientists have observed female walruses spending more time in the southwestern region of the Chukchi Sea due to changes in sea ice availability, resulting in less time resting and foraging, and likely resulting in reduced female walrus body condition. As sea ice continues to retreat to ever higher latitudes, these trends are expected to continue.

1  Additionally, new information regarding the impacts of ocean acidification on Pacific walrus
2  populations has been published by the scientific community.  Ocean acidification is driving
3  changes in prey availability for walruses and therefore negatively impacting walrus populations.
4  Despite this new information, the Service has not updated the Pacific walrus' stock assessment
5  report in more than six years.

6     46.    The status of manatee stocks has changed since 2014; however, the Service has
7  not updated manatee stock assessment reports.  Manatees face increasing threats to their
8  existence, including from watercraft-collision-related deaths.  The year 2019 marked one of the
9  deadliest years for manatees with excessive watercraft-related deaths in Florida, and the state
10 found that at least 637 manatees died in Florida's waterways in 2020.  Manatees in both the
11 southeastern United States and Puerto Rico also face increasing threats from habitat loss and
12 climate change. The loss of warm water refuge, made worse by sporadic cold fronts due to
13 climate change, and harmful algal blooms, made worse by increased precipitation and
14 temperature due to climate change, both negatively impact manatees and their surrounding
15 habitat. Increasing frequency and intensity of tropical storms, also exacerbated by anthropogenic
16 climate change, may cause stranding and calf separation for manatees, along with the destruction
17 of their seagrass feeding grounds.

18    47.    The Service's reliance on outdated stock assessment reports for take authorization
19 and other management activities is likely resulting in adverse effects on the marine mammal
20 stocks it is charged with protecting.  The level of take a population can sustain is determined in
21 the stock assessment reports through the potential biological removal level.  Additionally, other
22 valuable information about distribution, threats, and population trends is vital for the
23 management of these marine mammal stocks.  Consequently, the reliance on old reports leaves
24 the Service poorly equipped to determine if authorized take is consistent with MMPA objectives
25 to maintain optimum sustainable populations.  Yet take authorizations continue.  The Service's
26 failure to update stock assessments also deprives the public of scientific information and
27 processes to which it is legally entitled.

28    48.    Despite the changing threats and population trends of these marine mammals, the

13
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Service has not updated stock assessment reports as required by section 117(c) of the MMPA. 16 U.S.C. § 1386(c). New stock assessment reports are long overdue.

49. The Service's failure to review and revise stock assessment reports is an ongoing violation of the MMPA and the Administrative Procedure Act.

## CLAIM FOR RELIEF

**(Violation of Marine Mammal Protection Act and Administrative Procedure Act)**

50. Plaintiffs reallege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

51. The Service's failure to timely review and revise the stock assessment reports for the southern sea otter stock in California; the southwest, southcentral, and southeast Alaska stocks of northern sea otters; the Chukchi/Bering Seas and Southern Beaufort Sea stocks of polar bears; the Pacific walrus stock; and the Florida and Puerto Rico stocks of West Indian manatee in the southeastern United States violates section 117(c) of the MMPA. 16 U.S.C. § 1386(c).

52. The Service's failure to timely review and revise stock assessment reports for the southern sea otter stock in California; the southwest, southcentral, and southeast Alaska stocks of northern sea otters; the Chukchi/Bering Seas and Southern Beaufort Sea stocks of polar bears; the Pacific walrus stock; and the Florida and Puerto Rico stocks of West Indian manatee in the southeastern United States constitutes agency action that is unreasonably delayed and/or unlawfully withheld within the meaning of section 706(1) of the APA, and is subject to judicial review thereunder. 5 U.S.C. §§ 701–706.

53. Alternatively, the Service's failure to timely review and revise stock assessment reports for the southern sea otter stock in California; the southwest, southcentral, and southeast Alaska stocks of northern sea otters; the Chukchi/Bering Seas and Southern Beaufort Sea stocks of polar bears; the Pacific walrus stock; and the Florida and Puerto Rico stocks of West Indian manatee in the southeastern United States is arbitrary and capricious and not in accordance with procedures required by law, in violation of the Administrative Procedure Act, and is subject to judicial review thereunder. 5 U.S.C. §§ 701–706.

**PRAYER FOR RELIEF**

For the reasons stated above, Plaintiffs respectfully request that the Court grant the following relief:

1. A declaration that the Service is in violation of its non-discretionary duties and that its failure to review and revise the stock assessment reports for the southern sea otter stock in California; the southwest, southcentral, and southeast Alaska stocks of northern sea otters; the Chukchi/Bering Seas and Southern Beaufort Sea stocks of polar bears; the Pacific walrus stock; and the Florida and Puerto Rico stocks of West Indian manatee in the southeastern United States, within the timeframe the MMPA dictates constitutes agency action that is unreasonably delayed and/or unlawfully withheld or arbitrary, capricious, or otherwise not in accordance with the law;

2. An order compelling the Service to revise the stock assessment reports for the southern sea otter stock in California; the southwest, southcentral, and southeast Alaska stocks of northern sea otters; the Chukchi/Bering Seas and Southern Beaufort Sea stocks of polar bears; the Pacific walrus stock; and the Florida and Puerto Rico stocks of West Indian manatee in the southeastern United States, by dates certain;

3. Award Plaintiffs their costs of litigation, including reasonable attorneys' fees pursuant to the Equal Access to Justice Act; and

4. Grant Plaintiffs such other relief as the Court deems just and proper.

Dated: February 18, 2021                Respectfully submitted,

/s/ *Miyoko Sakashita*
Miyoko Sakashita (Cal. Bar # 239639)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7108
Email: miyoko@biologicaldiversity.org

Lalli Venkatakrishnan (Cal. Bar # 323747)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612

1
2
Tel: (510) 676-0348
Email: lvenkat@biologicaldiversity.org

3
4
*Attorneys for Plaintiffs Center for Biological Diversity and Turtle Island Restoration Network*

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF