JEAN E. WILLIAMS
Acting Assistant Attorney General
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief
TAYLOR A. MAYHALL, Trial Attorney (MN Bar No. 0400172)
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 598-3796
taylor.mayhall@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### (San Francisco)

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, and TURTLE ISLAND RESTORATION NETWORK, | ) ) ) |
| | ) Case No. 3:21-cv-01182-JCS |
| Plaintiffs, | ) |
| | ) **DEFENDANTS' MOTION TO DISMISS** |
| | ) **AND MEMORANDUM IN SUPPORT** |
| v. | ) **THEREOF** |
| | ) |
| U.S FISH AND WILDLIFE SERVICE, | ) Date: July 2, 2021 |
| and DEBRA HAALAND, in her official | ) Time: 9:30 AM |
| capacity as Secretary of the U.S. | ) Place: Courtroom F, 15th Floor |
| Department of the Interior, | ) Judge: Magistrate Judge Spero |
| | ) |
| Defendants. | ) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE, under Civil L.R. 7-2, that on Friday, July 2, 2021,[1] at 9:30 AM, or as soon thereafter as the Court's schedule permits, before Chief Magistrate Judge Spero of the United States District Court for the Northern District of California, San Francisco Division, Defendants United States Fish and Wildlife Service ("Service") and Debra Haaland, in her official capacity as Secretary of the U.S. Department of the Interior (collectively, "Defendants"), by and through undersigned counsel, will move the Court to dismiss this case.

Federal Defendants hereby move to dismiss Plaintiffs' Complaint for lack of standing and failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). In support of this Motion, Federal Defendants rely upon the enclosed Memorandum of Points and Authorities, the proposed order accompanying this Motion, the pleadings on file in this action, and such additional matters the Court may entertain, including oral argument, at the time of the hearing on this motion.

---

[1] Defendants' counsel is out of town and unavailable on Friday, June 25, 2021, which would be the soonest possible hearing date under Civil Local Rule 7-2(a).

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ...........................................................................................................1

II.     STATEMENT OF THE ISSUES TO BE DECIDED..................................................1

III.    STATUTORY AND REGULATORY BACKGROUND ............................................1

  A.    Marine Mammal Protection Act....................................................................................1

  B.    Administrative Procedure Act.......................................................................................3

IV.    FACTUAL BACKGROUND ......................................................................................4

V.     STANDARD OF REVIEW .........................................................................................5

VI.    ARGUMENT ...............................................................................................................7

  A.    Plaintiffs Have Not Plead and Cannot Plead Facts Sufficient to Show Standing ..........7

  i.    Plaintiffs Cannot Establish Injury-in-Fact ....................................................................8

        1.      Plaintiffs Cannot Establish Representational Injury .................................... 8

        2.      Plaintiffs Cannot Establish Organizational Injury .................................... 10

        3.      Plaintiffs Cannot Establish Procedural or Informational Injury ............................ 11

  ii.   Plaintiffs Cannot Establish Causation ........................................................................15

  iii.  Plaintiffs Cannot Establish Redressability ..................................................................16

  B.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted Regarding Revision of Six of the Nine SARs...............................................................................17

VII.   CONCLUSION ..........................................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

# TABLE OF AUTHORITIES

**CASE**                                                                              **PAGE**

*Allen v. Wright*,
    468 U.S. 737 (1984) ............................................................................................ 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 6

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) ................................................................................ 6

*Citizens for Better Forestry v. U.S. Dept. of Agric.*,
    341 F.3d 961 (9th Cir. 2003) .............................................................................. 11

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................................ 9

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ......................................................................................... 5, 7

*El Rescate Legal Servs. v. Exec. Office of Immigration Review*,
    959 F.2d 742 (9th Cir. 1992) .............................................................................. 18

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998) .............................................................................................. 12

*Friends of Animals v. Jewell*,
    828 F.3d 989 (D.C. Cir. 2016) ........................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*,
    528 U.S. 167 (2000) ............................................................................................ 7

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) ............................................................................................ 7

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .................................................................................. 7, 10, 12

*Humane Soc'y v. Locke*,
    626 F.3d 1040 (9th Cir. 2010) ............................................................................ 3

*Hunt v. Washington Apple Advertising Comm'n*,
    432 U.S. 333 (1977) ............................................................................................ 7

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020) ............................................................................ 16

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ............................................................................ 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................... passim

*Nat. Res. Defense Council, Inc. v. Evans*,
    279 F. Supp. 2d 1129 (N.D. Cal. 2003) ............................................................. 3

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ............................................................................................ 13

ii

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ........................................................................................ 6
*Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*,
    457 F.3d 941 (9th Cir. 2006) ...................................................................................... 11
*Project Sentinel v. Evergreen Ridge Apartments*,
    40 F. Supp. 2d 1136 (N.D. Cal. 1999) ....................................................................... 10
*Public Citizen v. Dep't of Justice*,
    491 U.S. 440 (1989)............................................................................................... 12, 13
*Smith v. Pac. Props. & Dev. Corp.*,
    358 F.3d 1097 (9th Cir. 2004) ...................................................................................... 7
*Spokeo, Inc., v. Robins*,
    136 S. Ct. 1540 (2016)................................................................................................... 7
*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................................ 5, 11
*Tyler v. Cuomo*,
    236 F.3d 1124 (9th Cir. 2000) ...................................................................................... 6
*Warth v. Seldin*,
    422 U.S. 490 (1975).................................................................................................... 6

**STATUTES**
5 U.S.C. § 702 ................................................................................................................... 4
5 U.S.C. § 706 ................................................................................................................. 19
5 U.S.C. § 706(2)(A).......................................................................................................... 4
16 U.S.C. § 1361(1) ........................................................................................................... 1
16 U.S.C. § 1361(2) ........................................................................................................... 1
16 U.S.C. § 1362(11) ......................................................................................................... 3
16 U.S.C. § 1362(12) ......................................................................................................... 2
16 U.S.C. § 1362(13) ......................................................................................................... 2
16 U.S.C. § 1362(19) ......................................................................................................... 3
16 U.S.C. § 1371(a) ........................................................................................................... 2
16 U.S.C. § 1386(a)(4)....................................................................................................... 2
16 U.S.C. § 1386(b) ......................................................................................................... 13
16 U.S.C. § 1386(b)(1) .......................................................................................... 3, 12, 14
16 U.S.C. § 1386(b)(3) ...................................................................... 2, 3, 12, 14, 18
16 U.S.C. § 1386(c)(1)............................................................................................... 3, 12
16 U.S.C. § 1386(c)(2)................................................................................... 3, 5, 12, 16, 17

**FEDERAL REGULATIONS**
Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 6
Other Authorities
82 Fed. Reg. 28,526 (June 22, 2017) ................................................................................ 4
85 Fed. Reg. 4696 (Jan. 27, 2020) .................................................................................... 4

iii

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

For two reasons, the Court should dismiss Plaintiffs' claims that Defendants have violated the Marine Mammal Protection Act ("MMPA") and the Administrative Procedure Act ("APA") by failing to timely review and revise stock assessment reports ("SARs") for nine marine mammal stocks. Compl. ¶ 51, 52, 53. First, Plaintiffs have not alleged and cannot allege that they have standing to bring their claims. The injuries that Plaintiffs allege are vague, speculative, unreasonably attenuated, and not redressable by this Court. Second, Plaintiffs fail to state a claim upon which relief can be granted as to revision of six of the nine SARs because Defendants have not determined revision is required and so no duty to revise has arisen under the MMPA.

### II.   STATEMENT OF THE ISSUES TO BE DECIDED

(1) Whether Plaintiffs lack standing to bring their claims.

(2) Whether Plaintiffs fail to state a claim upon which relief can be granted as to revision of six of the nine SARs.

### III.   STATUTORY AND REGULATORY BACKGROUND

#### A.  Marine Mammal Protection Act

Congress enacted the MMPA in 1972 based on its finding that "certain species and population stocks of marine mammals are, or may be, in danger of extinction or depletion as a result of man's activities." 16 U.S.C. § 1361(1).  "[S]uch species and population stocks should not be permitted to diminish beyond the point at which they cease to be a significant functioning element in the ecosystem of which they are a part, and, consistent with this major objective, they

1

should not be permitted to diminish below their optimum sustainable population." *Id.* § 1361(2). To effectuate this purpose, the MMPA imposes a general moratorium on the taking and importation of marine mammals.[2] *Id.* § 1371(a). The Act provides a number of exceptions to the moratorium, *id.* § 1371(a), and includes a procedure for regulating and authorizing limited incidental take of marine mammals by commercial fisheries. *Id.* § 1387.

In the 1994 amendments to the MMPA, Congress added section 117 requiring the development of stock assessment reports ("SARs") by the U.S. Fish and Wildlife Service ("Service") and the National Marine Fisheries Service for each marine mammal stock that occurs in waters under U.S. jurisdiction.[3] Based on the "best scientific information available," *id.* § 1386(b)(3), SARs are used to inform agency management of incidental taking of marine mammals in the course of commercial fishing operations and to evaluate the progress of commercial fisheries towards achieving the goal of zero mortality and serious injury to marine mammals. *See id.* §§ 1386(a)(4) (listing SAR informational requirements including descriptions of commercial fisheries that interact with the stock, estimated level of incidental mortality and serious injury of the stock by each such fishery on an annual basis), 1387(f) (discussing how to use information in SARs to create a take reduction plan for species that interact with fisheries).

Section 117 directs the Service to review SARs on an annual basis for "strategic" stocks, an annual basis for stocks "for which significant new information is available," and every three

---

[2] "Take" is defined as "harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13).

[3] The MMPA assigns responsibility for cetaceans (whales and dolphins) and pinnipeds (seals and sea lions) to the Secretary of Commerce, who delegates her authority to the National Marine Fisheries Service, and assigns responsibility for the remaining marine mammal species to the Secretary of the Interior, who delegates her authority to the Service. 16 U.S.C. § 1362(12). The species at issue in this case are under the jurisdiction of the Service.

years for non-strategic stocks.[4] *Id.* § 1386(c)(1). The Service is required to revise SARs only if such review indicates that "the status of the stock has changed or can be more accurately determined." *Id.* § 1386(c)(2). If the Service determines that a revision of a SAR is warranted, it must publish a notice of availability of the draft SAR in the Federal Register and provide an opportunity for public notice and comment. *Id.* §§ 1386(b)(1), (c)(2). After consideration of the best scientific information available, the advice of the appropriate regional scientific review group, and the comments of the general public, the Service must publish a notice of availability of the final revised SAR in the Federal Register within 90 days after the close of the draft SAR public comment period or final action on an agency proceeding under section 1371(b).[5] *Id.* § 1386(b)(3). There is no private right of action under the MMPA, so judicial review is available, if at all, only through the APA. *See, e.g.*, *Humane Soc'y v. Locke*, 626 F.3d 1040, 1047 (9th Cir. 2010); *Nat. Res. Defense Council, Inc. v. Evans*, 279 F. Supp. 2d 1129, 1142 (N.D. Cal. 2003).

## B. Administrative Procedure Act

The APA identifies who may challenge agency action and what actions may be challenged. Section 702 provides a cause of action for those suffering actual injury as a result of

---

[4] "Stock" is defined as "a group of marine mammals of the same species or smaller taxa in a common spatial arrangement, that interbreed when mature." 16 U.S.C. § 1362(11). "Strategic stock" is defined as "a marine mammal stock (a) for which the level of direct human-caused mortality exceeds the potential biological removal level; (b) which, based on the best available scientific information, is declining and is likely to be listed as a threatened species under the Endangered Species Act of 1973 within the foreseeable future; or (c) which is listed as a threatened species or endangered species under the Endangered Species Act of 1973, or is designated as depleted under this chapter." *Id.* § 1362(19).

[5] Section 1371(b)(1) sets forth the Alaskan native "take" exemption. A qualifying Alaskan native can request an agency hearing on a proposed revised SAR. Besides the regulation of commercial fisheries, this is the only other statutory reference that ties the information in a SAR to a regulatory decision under the Act (*i.e.*, depletion determinations upon which regulations of take by Alaskan natives can be issued).

a final agency action. 5 U.S.C. § 702. "Final agency action" forms the basis of a court challenge and provides the court the authority to review the case under the APA. *Id.* § 704. Under the APA, the court may "hold unlawful and set aside" final agency action that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). The APA also provides for a court to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

## IV.  FACTUAL BACKGROUND

Plaintiffs claim that the Service has failed to timely review and revise SARs for nine stocks: the Southern sea otter stock in California (strategic); the Southwest (strategic), Southcentral (non-strategic), and Southeast (non-strategic) Alaska stocks of Northern sea otters; the Chukchi/Bering Seas (strategic) and Southern Beaufort Sea (strategic) stocks of polar bears; the Pacific walrus stock (strategic); and the Florida (strategic) and Puerto Rico (strategic) stocks of West Indian manatee in the southeastern United States.

Regarding the Southern sea otter stock, the Chukchi/Bering Sea polar bear stock, and the Southern Beaufort Sea polar bear stock, the Service has determined that SAR revisions are warranted. The Service published Federal Register notices requesting public comments on the draft revised SARs for these three stocks. 82 Fed. Reg. 28,526 (June 22, 2017) (polar bears); 85 Fed. Reg. 4696 (Jan. 27, 2020) (Southern sea otter). The Service anticipates publishing in the Federal Register the notice of availability of the final revised SARs for both polar bear stocks and the Southern sea otter stock by July 2021.[6]

---

[6] Defendants do not consider the facts in this sentence or the following two sentences as "factual contentions made in support of" this motion to dismiss, such that an affidavit or declaration is

Regarding the remaining six stocks at-issue in this case, the Service will complete its annual SAR reviews for the Southwest Alaska stock of Northern sea otters, the Pacific walrus stock, and the Florida and Puerto Rico stocks of West Indian manatee in 2021. The Service will also complete its triennial SAR reviews for the Southcentral and Southeast Alaska stocks of Northern sea otters in 2021. As part of these reviews, the Service will determine whether SAR revisions are warranted based on the best scientific information available. *See* 16 U.S.C. § 1386(c)(2). Pursuant to section 117(c)(2) of the MMPA, the Service is only required to revise stock assessments if the stock assessment review "indicates that the status of the stock has changed or can be more accurately determined." *Id.*

On December 1, 2020, Defendants received a letter from Plaintiffs indicating their intent to file suit, and on February 18, 2021, Plaintiffs filed their Complaint in this Court. ECF No. 1.

V.     STANDARD OF REVIEW

Article III of the Constitution limits the judicial power of the United States to the resolution of "Cases" and "Controversies." U.S. Const., art. III, § 2, cl. 1. "The 'core component' of the requirement that a litigant have standing to invoke the authority of a federal court 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For purposes of standing, the Supreme Court "requires federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction." *Summers v. Earth Island*

required under Civil L.R. 7-5(a). Rather, these facts are given as background information to contextualize the status of the nine at-issue SARs for the Court.

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

5

*Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). Additionally, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). "For purposes of ruling on a motion to dismiss for want of standing," the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of claims where plaintiffs have failed to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court considering such a motion takes the complaint's factual allegations to be true and construes them liberally in the plaintiff's favor. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are thus insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court is not required to accept as true a "legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## VI.   ARGUMENT

### A.  Plaintiffs Have Not Plead and Cannot Plead Facts Sufficient to Show Standing

The constitutional minimum of standing contains three elements. *Lujan*, 504 U.S. at 560. First, a plaintiff must allege an invasion of a legally protected interest which is concrete and particularized and which is actual or imminent and not conjectural. *Id.*; *see Spokeo, Inc., v. Robins*, 136 S. Ct. 1540, 1548 (2016). Second, there must be a causal connection between the injury and the conduct complained of—in other words, the injury must be fairly traceable to the challenged action. *Lujan*, 504 U.S. at 560. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 561. The burden of establishing these elements rests squarely on a plaintiff, who must meet the burden by alleging facts that "affirmatively" and "clearly" demonstrate standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Organizational plaintiffs such as Center for Biological Diversity ("CBD") and Turtle Island Restoration Network ("TIRN") must show either that they have "representational standing," which is contingent upon the ability of at least one of their members to bring suit, or that they have "organizational standing," which turns instead on whether each organization itself suffered an injury-in-fact. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). If suing on behalf of their members, organizations must show that their members meet the threshold requirements for standing. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101–02 (9th Cir. 2004) (citing *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977)). Standing must be assessed claim-by-claim, *see DaimlerChrysler Corp.*, 547 U.S. at 352, and "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of*

7

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

*the Earth, Inc. v. Laidlaw Envtl. Serv.*, 528 U.S. 167, 185 (2000). In this case, Plaintiffs CBD and TIRN have not made the substantial showing that is required to establish either representational or organizational standing.

### i. Plaintiffs Cannot Establish Injury-in-Fact

### 1. Plaintiffs Cannot Establish Representational Injury

To establish an interest, Plaintiffs list off vague and generalized ways that their members and staff interact with the nine species at-issue in this case. Plaintiff CBD alleges that it has members and staff who "reside in and/or visit the coastal areas of California, Florida, Puerto Rico, and Alaska and adjoining marine waters where the marine mammals at issue in this case occur." Compl. ¶ 11. Regarding specific species, Plaintiff CBD asserts that its members "have researched, observed, photographed, enjoyed the habitat of, and sought protection for the polar bear, walrus, and sea otter in Alaska" and "regularly visit[] the shores and waters of California to observe, study, and enjoy California sea otters" and "the habitat of the Antillean and Florida manatees." Compl. ¶ 12. Plaintiff TIRN alleges that it has members and staff who "regularly use the coastal waters of the western United States, Alaska, Florida, and Puerto Rico for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities" and that its members and staff "intend to continue to study, visit, and observe—or attempt to study, visit, and observe—these species in the future." Compl. ¶ 13.

Plaintiffs fail to identify any specific individual member of either organization with concrete plans to study, teach about, view, or visit any of the nine species at-issue. At best, Plaintiff TIRN refers to vague categories of people or groups—"research biologists, eco-tour operations, and professional photographers and videographers," Compl. ¶ 13—without stating

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

how these people or groups will be "directly affected [by the challenged inaction] apart from their special interest in the subject." *Lujan*, 504 U.S. at 563.

Furthermore, Plaintiffs' alleged injuries are not "actual or imminent." Plaintiffs make the conclusory allegation that their interests "are injured," Compl. ¶ 14, and "are adversely affected," Compl. ¶ 15, in the present tense. Yet, Plaintiffs have not given, and cannot give, an example of how their members are currently suffering an inability to observe, research, or enjoy the nine marine mammal species at-issue due to the Service's alleged failure to review and revise the SARs. "Where there is no actual harm . . . its imminence (though not its precise extent) must be established." *Lujan*, 504 U.S. at 564, n.2. Plaintiffs merely state that they "will continue to visit those areas in the future" and "intend to continue to study, visit, and observe" the nine marine mammal species "in the future." Compl. ¶¶ 12, 13. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (emphasis in original). Even if Plaintiffs could identify specific members that have definite plans to interact with all nine stocks at-issue, they cannot establish that such plans will be imminently harmed as a result of Defendants' alleged failure to act. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (explaining that a party must demonstrate its predicted injuries are "*certainly* impending," which excludes injuries that are merely "possible" (citations omitted)). Accordingly, Plaintiffs have not plead a concrete, particularized injury to satisfy injury-in-fact standing requirements.

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

### 2.  Plaintiffs Cannot Establish Organizational Injury

Plaintiffs also fail to establish any injury-in-fact to the plaintiff-organizations themselves. Courts have recognized that "[a]n organization suing on its own behalf can establish an injury when it suffered both a diversion of its resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (internal quotation omitted); *see also Havens Realty Corp.*, 455 U.S. at 378–79. A plaintiff must allege "a concrete and demonstrable injury to its activities, not simply a setback to the organization's abstract social interests." *Project Sentinel v. Evergreen Ridge Apartments*, 40 F. Supp. 2d 1136, 1138 (N.D. Cal. 1999).

Plaintiffs' Complaint states that they are suing on behalf of the organizations themselves, as well as on behalf of the members and staff of the organizations. Compl. ¶ 12, 13. As to Plaintiff CBD, the Complaint claims that its "Oceans Program focuses on the protection of marine species and their ocean habitats, including significant efforts to ensure the conservation of marine mammals." Compl. ¶ 10. Regarding the species at issue in this case, the Complaint lists CBD's work as including "efforts to ensure [ESA] protections for polar bears and sea otters in Alaska, oversight of offshore oil and gas activities affecting Pacific walruses, and actions to reduce fisheries' bycatch of California sea otters and to conserve manatees." Compl. ¶ 10. As to TIRN, the Complaint describes its mission to study, protect, enhance, conserve, and preserve the world's marine and terrestrial ecosystems and the wildlife that inhabit the oceans, including marine mammals. Compl. ¶ 13. All of these statements purport to establish a connection to the species at-issue, but do nothing to establish a concrete and demonstrable injury to either organization's activities. There is no mention of how the organizations have diverted resources,

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

10

how a specific program has been affected, or how the overall social missions have been or will imminently be impacted in any way by the Service's alleged failure to timely review and revise nine SARs. Therefore, Plaintiffs have not sufficiently alleged an organizational injury-in-fact.

### 3. Plaintiffs Cannot Establish Procedural or Informational Injury

Plaintiffs attempt to establish procedural and informational injuries by making conclusory allegations that "because Plaintiffs have concrete interests in ensuring up-to-date stock assessments, Plaintiffs' interests are adversely affected by the Service's failure to fulfill its procedural duties under the MMPA to timely update the [SARs]." Compl. ¶ 16. Plaintiffs also claim that they "are harmed by the Service's failure to prepare these [SARs] because they are unable to use the information contained in the report and are unable to participate in the public comment process." Compl. ¶ 17. These allegations overstate the legal rights actually conferred by the statute, and do not establish any concrete deprivation or denial caused by the Service in relation to the nine SARs at-issue.

Courts in the Ninth Circuit have established that a plaintiff asserting a procedural injury must show that "(1) the [agency] violated certain procedural rules; (2) these rules protect [a plaintiff's] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941 (9th Cir. 2006) (quoting *Citizens for Better Forestry v. U.S. Dept. of Agric.*, 341 F.3d 961, 969–70 (9th Cir. 2003)). The mere violation of a procedural right "without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496.

The Supreme Court has found that plaintiffs suffered informational injury when they

11

were *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) (addressing the Federal Election Campaign Act); *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (addressing the Federal Advisory Committee Act ("FACA")); *Havens Realty Corp.*, 455 U.S. at 373 (1982) (addressing the Fair Housing Act of 1968). Thus, the question to establish informational injury is whether MMPA section 117 creates a right to information that Plaintiffs have been denied.

Regarding procedural rights, contrary to Plaintiffs' assertion, there is no "procedural dut[y] under the MMPA to timely update" SARs.[7] Compl. ¶ 16. Looking at the text of the MMPA, section 117 creates a right to public comment only for draft revised SARs. 16 U.S.C. § 1386(b)(1). The Service is required to publish a draft revised SAR when it has determined during review that a stock's status has "changed or can be more accurately determined." *Id.* § 1386(c)(2). In this case, the Service has made the requisite determination and published draft revised SARs for three of the nine stocks at-issue (the Southern sea otter, Chukchi/Bering Sea and Southern Beaufort Sea polar bear stocks), and Plaintiffs have not alleged, nor can they allege, that they were deprived of the opportunity to view or comment on those proposed revisions. As to the other six stocks, because the Service has not issued draft revised SARs, Plaintiffs do not yet have any procedural rights to them under section 117, and therefore cannot allege that they have been deprived of these procedural rights.

Regarding informational rights, section 117 of the MMPA is not akin to other statutes that Congress has enacted primarily to ensure access to information and that contain statutory

---

[7] To be clear, an "updated" SAR is not a legal term or requirement under section 117. There is a SAR <u>review</u>, which is an action taken by the Service to review the status of the stock either annually or triennially. 16 U.S.C. § 1386(c)(1). There is also a <u>final revised</u> SAR, which is a final agency action that occurs after the Service determines that a revision is warranted under section 117(c), complies with the public comment process on the draft revised SAR pursuant to section 117(b), and publishes its final determination in the Federal Register. *Id.* § 1386(b)(3).

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

language geared toward making that information available for public inspection. *Cf. Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of [the Freedom of Information Act] is to ensure an informed citizenry."); *Public Citizen*, 491 U.S. at 445–46 1989) ("FACA was born of a desire [that] . . . the public remain apprised of [advisory committee's] existence, activities, and cost."). As evidenced by the legislative history of section 117, Congress added the SARs provision in the 1994 MMPA amendments not to entitle the public to general information related to "up-to-date" SARs for the purposes of "carry[ing] out their organizational missions," Compl. ¶ 17, but to inform agency management of incidental taking of marine mammals in the course of commercial fishing operations. *See* Senate Rep. No. 103-220, at 11 (1994); MMPA Reauthorization: Hearing on Governing Interactions Between Marine Mammals and Commercial Fishing Operations, Before the H. Subcomm. on Envt. and Nat. Res. of the Comm. on Merchant Marine and Fisheries, 103rd Cong. 4-5 (1993) (statement of Diana Josephson, Acting Undersecretary for Oceans and Atmosphere, National Oceanic and Atmospheric Administration).[8] Section 117 only creates a limited public right to information related to draft revised SARs and final revised SARs. *See* 16 U.S.C. § 1386(b). The Service is required to publish in the Federal Register a notice of availability of a draft revised SAR which "shall include a summary of the assessment and a list of the sources of information or published

---

[8] Other legislative history for section 117 further demonstrates Congress's intent. The version of the bill discussed in H.R. Rep. No. 103-439 would have required the Services to create SARs for "each marine mammal stock which occurs in waters under the jurisdiction of the United States *and which is taken incidental to commercial fishing operations* . . ." *Id.* at 9 (emphasis added). Thus, under this version, SARs would have only been required for stocks incidentally taken by commercial fisheries. Although this version of the amendments was not adopted, it demonstrates that Congress primarily intended the SARs to inform decision-making related to commercial fisheries and take reduction plans under section 118(f), not primarily to inform non-profit organizational missions.

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

13

reports upon which the assessment is based." *Id.* § 1386(b)(1). The Service is also required to publish in the Federal Register a notice of availability and a summary of the final revised SAR, after consideration of the best scientific information available, the advice of the appropriate regional scientific review group, and the comments of the general public. *Id.* § 1386(b)(3). As to three of the nine stocks at-issue (the Southern sea otter, Chukchi/Bering Sea and Southern Beaufort Sea polar bear stocks), Plaintiffs have not, nor can they, allege that they were deprived of the opportunity to view the draft revised SARs. As to the other six stocks, because the Service has not issued draft revised SARs or final revised SARs, Plaintiffs do not yet have any informational rights to them under section 117.

Throughout their Complaint, Plaintiffs go back and forth between alleging an injury from Defendants' failure to "review and revise" SARs to the Defendants' failure to "timely update" SARs. *Compare* Compl. ¶¶ 14, 15 (alleging the Service's failure to review and revise) *with* ¶¶ 1, 3, 4, 5, 16 (alleging the Service's failure to update). They seem to be operating under the faulty premise that updated or new information is available for review, and therefore, the Service should have already determined to revise all nine SARs, which would have entitled Plaintiffs to procedural and informational rights for the draft and final revised SARs. Not only is this premise faulty because it relies on the assumption that updated or new information exists, but also because it equates any updated or new information that does exist to the statutorily-required "best scientific information available." 16 U.S.C. § 1386(b)(3). More importantly, this faulty premise does not meet the legal standards required to establish procedural or informational injury for the purposes of standing. *See Friends of Animals v. Jewell*, 828 F.3d 989 (D.C. Cir. 2016) (holding that plaintiff did not suffer informational injury where challenged statutory provision

14

did not *yet* entitle plaintiff to information until certain further findings were made by the agency, even though plaintiff alleged those findings should have been made already).

### ii.  Plaintiffs Cannot Establish Causation

To establish standing, Plaintiffs must not only prove the existence of a legally-cognizable injury-in-fact, but also prove that the injury is caused by the Defendants. *Lujan*, 504 U.S. at 560. Here, Plaintiffs' theory of causation is as follows: "[o]utdated stock assessments" allegedly "result in management decisions that are less informed" which allegedly leads to "activities being permitted that adversely affect the survival and recovery of these species" which allegedly leads to "increase[d] chances that population declines and other adverse impacts to these animals will occur but will go unnoticed and/or unaddressed" which allegedly leads to "reduc[ed] likelihood that Plaintiffs and their members will be able to continue to observe, research, and enjoy these marine mammals in their natural environment." Compl. ¶ 15. This causal chain is both extremely lengthy and entirely vague and hypothetical. *Cf. Lujan*, 504 U.S. at 566 ("[s]tanding is not an ingenious academic exercise in the conceivable") (internal citation omitted). Plaintiffs fail to identify any specific management decision that relies on information in SARs, nor any specific activity that, if permitted, may adversely affect the survival and recovery of the species. The link between the challenged inaction and the alleged injury depends on Plaintiffs' pessimistic assumptions about vague "management decisions" and future discretionary permitting decisions that are not challenged and cannot be addressed by this lawsuit. The attenuated chain of assumptions that Plaintiffs use as a causal connection between the challenged inaction and the alleged injuries is too speculative.

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

1

### iii.  Plaintiffs Cannot Establish Redressability

2

Plaintiffs also fail to make the final showing to establish standing: that the relief they

3

seek is "both (1) substantially likely to redress their injuries; and (2) within the district court's

4

power to award." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020). Plaintiffs allege

5

that an "order compelling the stock assessment reports by a date certain will reduce the

6

likelihood that excessive take of marine mammals will be authorized." Compl. ¶ 18. "Moreover,

7

requiring preparation of the reports will provide Plaintiffs access to the information in the stock

8

assessments and an opportunity to participate by commenting on the reports." Compl. ¶ 18.

9

10

First, Plaintiffs have not sufficiently alleged that the relief they request is "likely, as

11

opposed to merely speculative" to redress any of their alleged injuries. *Lujan*, 504 U.S. at 561

12

(internal quotation omitted). Their assumption that compelling revised SARs "will reduce the

13

likelihood" that the agency will make separate management decisions and discretionary

14

permitting decisions authorizing "excessive take" is entirely conclusory and not nearly enough to

15

meet the "substantially likely to redress their injuries" threshold. If Plaintiffs are concerned about

16

the outcome of separate, unspecified agency decisions that may be made in the future, then

17

Plaintiffs can bring a separate legal challenge against those decisions, if they occur. Such a suit

18

would be much more "likely to redress" their alleged injuries.

19

20

Second, Plaintiffs have not shown and cannot show that the Court has the legal ability to

21

grant the requested remedy to compel revised SARs by a date certain for six of the nine stocks.

22

The MMPA requires revised stock assessment reports only where a review has found that the

23

stock's status "has changed or can be more accurately determined." 16 U.S.C. § 1386(c)(2). For

24

three of the stocks (the Southern sea otter, Chukchi/Bering Sea and Southern Beaufort Sea polar

25

26

27

28

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

bear stocks), the Service has already promulgated draft revised SARs (and intends to issue the final revised SARs in July, *see supra* n.6). For the other six stocks, the Service has not issued draft revised SARs. The Court cannot order the Service to revise these six SARs where the Service has not determined that revisions are warranted based on the best scientific information available. At most, this Court could only order the Service to perform its mandatory review of the six stocks to determine if revision is warranted under the statute, which the Service will continue to perform as part of its scheduled reviews for 2021. But Plaintiffs do not seek an order compelling review, only an order compelling revision by dates certain. Compl. ¶ 18, 15 at ¶ 2. For the same reasons Plaintiffs have not established and cannot establish redressability from their relief sought, Plaintiffs have also failed to state a claim upon which relief can be granted, as explained further below.

### B.  Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted Regarding Revision of Six of the Nine SARs

Plaintiffs allege that the Service's "failure to timely review <u>and</u> revise" the SARs for the Southwest, Southcentral, and Southeast Alaska Northern sea otter stocks; the Pacific walrus stock; and the Florida and Puerto Rico stocks of West Indian manatee "violates section 117(c) of the MMPA." Compl. ¶ 51 (emphasis added). This is incorrect as a matter of law. As explained above, the MMPA requires the Service to revise stock assessment reports <u>only</u> where the Service's review indicates that a stock's status "has changed or can be more accurately determined." 16 U.S.C. § 1386(c)(2).  If the Service's review does not indicate that the status of the stock has changed or can be more accurately determined, then the Service is not under any statutory obligation to revise the SAR.

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

Nor does the MMPA impose a deadline by which to revise SARs. Plaintiffs' assertions appear to be premised on the erroneous assumption that, just because time has passed since the Service last revised a SAR, the Service is under a statutory obligation to revise the SAR again by a certain date. *See* Compl. ¶ 4 ("For some species, the stock assessments have not been revised *for more than a decade*.") (emphasis in original). This is without merit. The only statutorily-imposed deadline arises once the Service publishes a draft revised SAR. Then, the Service is required to publish a notice of availability and summary of the final revised SAR in the Federal Register within 90 days after the close of the draft SAR public comment period or final action on an agency proceeding under section 1371(b). 16 U.S.C. § 1386(b)(3). Because the MMPA does not require the Service to revise SARs within a certain amount of time, Plaintiffs have failed to state a claim for which relief can be granted as to the Southwest, Southcentral, and Southeast Alaska Northern sea otter stocks; the Pacific walrus stock; and the Florida and Puerto Rico stocks of West Indian manatee.

Under the section "Claim For Relief," Plaintiffs also allege that the Service's "failure to timely review and revise" the SARs for the same six stocks "constitutes agency action that is unreasonably delayed and/or unlawfully withheld" under the APA or, in the alternative, "is arbitrary and capricious" under the APA, and therefore "is subject to judicial review thereunder." Compl. ¶ 52, 53. Plaintiffs correctly recognize that the APA provides the framework for review of allegations that an agency has violated some other underlying substantive statutory requirement, but the APA cannot be the source of a freestanding claim. *See El Rescate Legal Servs. v. Exec. Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1992). Paragraphs 52 and 53 of the Complaint merely recite standards of judicial review under the APA and do not set

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS

forth any new violations of the MMPA. *See* 5 U.S.C. § 706. Thus, the only substantive statute

that Plaintiffs allege Defendants have violated is the MMPA, and as explained above, Plaintiffs

have failed to state a proper legal claim under the MMPA as to revision of six of the nine SARs.

## VII.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss should be granted, Plaintiffs'

Complaint should be dismissed, and judgment should be entered in favor of Defendants.

Dated: May 17, 2021                               Respectfully Submitted,

JEAN E. WILLIAMS,
Acting Assistant Attorney General
SETH M. BARSKY, Section Chief
MEREDITH L. FLAX, Assistant Section Chief

*/s/ Taylor A. Mayhall*
TAYLOR A. MAYHALL
Trial Attorney, MN Bar No. 0400172
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-3796
taylor.mayhall@usdoj.gov

*Attorneys for Defendants*

**ATTESTATION OF CONCURRENCE**

In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that I obtained concurrence in the filing for the signatures of all counsel indicated by a conformed signature ("/s/") within this e-filed document.

/s/ *Taylor A. Mayhall*
TAYLOR A. MAYHALL
Attorney for Defendants

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/ *Taylor A. Mayhall*
TAYLOR A. MAYHALL, Trial Attorney
MN Bar No. 0400172
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station. P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 598-3796
Fax: (202) 305-0275
Email: taylor.mayhall@usdoj.gov

20

DEFS.' MOT. TO DISMISS AND MEM. IN SUPP. THEREOF
No. 3:21-cv-01182-JCS