JEAN E. WILLIAMS
Acting Assistant Attorney General
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief
TAYLOR A. MAYHALL, Trial Attorney (MN Bar No. 0400172)
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 598-3796
taylor.mayhall@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### (San Francisco)

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, and TURTLE ISLAND RESTORATION NETWORK,<br><br>Plaintiffs,<br><br>v.<br><br>U.S FISH AND WILDLIFE SERVICE, and DEBRA HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior,<br><br>Defendants. | Case No. 3:21-cv-01182-JCS<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date: July 23, 2021<br>Time: 9:30 AM<br>Place: Courtroom F, 15th Floor<br>Judge: Magistrate Judge Spero |

Defendants United States Fish and Wildlife Service ("Service") and Debra Haaland, in her official capacity as Secretary of the United States Department of the Interior (collectively, "Defendants") respectfully submit this Reply Memorandum in support of their Motion to Dismiss.

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. STANDARD OF REVIEW ............................................................................................2

III. ARGUMENT ..................................................................................................................3

   A. This Court Lacks Jurisdiction Over Plaintiffs' Claims Because Plaintiffs Have Not Adequately Alleged Standing ...............................................................................................3

      i. Plaintiffs Do Not Adequately Allege Representational Standing on Behalf of Their Individual Members ..............................................................................................4

      ii. Plaintiffs Do Not Adequately Allege Informational Standing .....................................6

      iii. Plaintiffs Do Not Adequately Allege Procedural Standing ..........................................9

   B. Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted Regarding Review of all Nine SARs and Revision of Six SARs ..........................................................................12

IV. CONCLUSION .............................................................................................................14

# TABLE OF AUTHORITIES

*Animal Legal Def. Fund v. United States Dep't of Agric.*,
   935 F.3d 858 (9th Cir. 2019) .................................................................................................. 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 12, 13

*B.C. v. Plumas Unified Sch. Dist.*,
   192 F.3d 1260 (9th Cir. 1999) ................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 12

*Center for Biological Diversity v. Kempthorne*,
   588 F.3d 701 (9th Cir. 2009) .................................................................................................. 4

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .......................................................................................................... 5, 6

*Ctr. for Biological Diversity v. Brennan*,
   571 F. Supp. 2d 1105 (N.D. Cal. 2017) ....................................................................... 6, 10, 11

*Ctr. for Biological Diversity v. Haaland*,
   No. 20-5088, 2021 U.S. App. LEXIS 15619 (D.C. Cir. 2021) .......................................... 10, 11

*Fed. Election Comm'n v. Akins*,
   524 U.S. 11 (1998) ................................................................................................................ 6

*Friends of Animals v. Jewell*,
   824 F.3d 1033 (D.C. Cir. 2016) .............................................................................................. 8

*Friends of Animals v. Jewell*,
   828 F.3d 989 (D.C. Cir. 2016) ................................................................................................ 8

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) .............................................................................................................. 6

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ........................................................................................... 2, 3

*Nat'l Lab. Rels. Bd. v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) .............................................................................................................. 7

*Pub. Citizen v. Dep't of Just.*,
   491 U.S. 440 (1989) .................................................................................................... 6
*Southcentral Found. v. Alaska Native Tribal Health Consortium*,
   983 F.3d 411 (9th Cir. 2020) ...................................................................................... 7
*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................................ 3, 5, 9
*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) .................................................................................................... 5
*Warth v. Seldin*,
   422 U.S. 490 (1975) .................................................................................................... 3
*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) .................................................................................................... 5
*Wilderness Soc'y, Inc. v. Rey*,
   622 F.3d 1251 (9th Cir. 2010) .................................................................................... 9

**STATUTES**

16 U.S.C. § 1362(12)(B) ..................................................................................................... 1
16 U.S.C. § 1371(b) ............................................................................................................. 1
16 U.S.C. § 1382(e) ............................................................................................................. 1
16 U.S.C. § 1386(b) ................................................................................................... 7, 9, 10
16 U.S.C. § 1386(b1) ......................................................................................................... 10
16 U.S.C. § 1386(c)(1) ....................................................................................................... 13
16 U.S.C. § 1386(c)(2) ....................................................................................................... 13

**FEDERAL REGULATIONS**

Fed. R. Civ. P. 12(b)(1) ....................................................................................................... 2
Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 2
Fed. R. Civ. P. 12(h)(3) ....................................................................................................... 3
86 Fed. Reg. 5322 ............................................................................................................. 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Section 117 of the Marine Mammal Protection Act ("MMPA") provides for the development of stock assessment reports ("SARs") by the Service for each marine mammal stock that occurs in waters under U.S. jurisdiction. Contrary to Plaintiffs' assertions, SARs do not themselves set sustainable levels of mortality for marine mammals, nor does the MMPA require the Service to use SARs as the sole sources of information in any particular application, management decision, or take regulation. SARs are summaries of the best scientific information available and are used primarily as a tool to inform agency management[1] of incidental take of marine mammals in the course of commercial fishing operations.[2]

In section 117, Congress gave the Service wide discretion. While the Service must annually or triennially review SARs, the information gleaned from the reviews is internal to the Service. Congress did not provide for any public information or participation opportunities for SAR *reviews*. Under section 117, the Service has discretion to decide during its reviews, using the best scientific information available, whether a SAR warrants *revision*; this decision is solely under the authority and discretion of the agency.

Plaintiffs are environmental organizations who seek to use the information in the Service's SARs for their own agendas. Throughout Plaintiffs' Opposition to Defendants' Motion

---

[1] Management of incidental take of marine mammals in the course of commercial fishing operations has been delegated exclusively to the Secretary of Commerce, who delegates her authority to the National Marine Fisheries Service ("NMFS"). *See* 16 U.S.C. § 1362(12)(B) (defining Secretary under section 1387 as the Secretary of Commerce).

[2] Additionally, under the MMPA, the information in a SAR can be used in an agency hearing related to an Alaskan native "take" exemption, *id.* § 1371(b), and to inform the design of discretionary conservation measures, *id.* § 1382(e).

REPLY MEM. IN SUPPORT OF DEFS.' MOT. TO DISMISS                                    1
No. 3:21-cv-01182-JCS

to Dismiss ("Plaintiffs' Brief"), Plaintiffs repeatedly mischaracterize the framework of MMPA section 117, improperly try to narrow the Service's discretion, and seek information to which they are not entitled under the MMPA. The injuries that Plaintiffs allege are vague, speculative, unreasonably attenuated, and not redressable by this Court. Plaintiffs have not adequately alleged that they have standing to bring their claims, and therefore the Court does not have jurisdiction. Additionally, Plaintiffs fail to state a claim upon which relief can be granted as to *revision* of six of the nine SARs because the Service has not determined revision is required and so no duty to revise has arisen under the MMPA. Moreover, Plaintiffs' Brief emphasizes that they are separately challenging the Service's *review* for all nine SARs, but here Plaintiffs have also failed to state a claim upon which relief can be granted because Plaintiffs cannot plausibly allege that the Service is not complying with its duty to review. For these reasons, Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of standing and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II.   STANDARD OF REVIEW

Plaintiffs have misconstrued Defendants' motion as entirely brought under Fed. R. Civ. P. 12(b)(6). *See* ECF No. 20 ("Pls.' Br.") at 2, 5, 6. A challenge to standing brought under Rule 12(b)(6) relates to statutory standing, not constitutional standing. *See, e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis in original) ("Though lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). Defendants' motion clearly challenges constitutional standing. *See, e.g.*, ECF No. 17 ("Defs.' Br.") at 56 (explaining in standard of review section that standing under Article III of

the Constitution is a requirement for a party to warrant invocation of federal court jurisdiction), 7–17 (analyzing the three elements that make up the "constitutional minimum of standing").

Even though Defendants did not explicitly state that their standing challenge is brought under Rule 12(b)(1), their intent to challenge constitutional standing as a threshold jurisdictional issue is evident. Moreover, even if Defendants had not challenged standing at all, this Court has the authority and responsibility to examine jurisdictional issues at any time. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"); *see also B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing."). Therefore, Plaintiffs are incorrect to "unnecessarily limit[] the scope of [this Court's] review" by focusing narrowly on Rule 12(b)(6) standards to evaluate standing. *Maya*, 658 F.3d at 1067.

## III. ARGUMENT

### A. This Court Lacks Jurisdiction Over Plaintiffs' Claims Because Plaintiffs Have Not Adequately Alleged Standing

Plaintiffs point out that "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." Pls.' Br. at 5 (quoting *Maya*, 658 F.3d at 1068). At this motion to dismiss stage, Plaintiffs are correct that they are not required to provide affidavits and the Court "must accept as true all material allegations of the complaint." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Even still, Plaintiffs have failed to allege "such a personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks omitted).

### i. Plaintiffs Do Not Adequately Allege Representational Standing on Behalf of Their Individual Members

Plaintiffs' allegations of concrete harm to their individual members' interests from "the Service's failure to review and revise SARs for nine marine mammal stocks" are implausible and not factual. Pls.' Br. at 6. Plaintiffs have failed to adequately allege facts that could support an actual or imminent harm that is traceable to the challenged failure to act.

In their Brief, Plaintiffs repeat the generalized allegations from their Complaint that their members and staff interact with the nine species at issue. Plaintiffs claim that their vague allegations are "more than sufficient to establish standing" and cite to *Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009), a case involving a substantially different context. Pls.' Br. at 7. In *Kempthorne*, Plaintiffs challenged under the MMPA and the National Environmental Policy Act the Service's final regulations authorizing the incidental, non-lethal "take" of polar bears and Pacific walrus by oil and gas activities in and along the Beaufort Sea on the Northern Coast of Alaska, pursuant to section 101(a)(5)(A) of the MMPA. 588 F.3d at 705. Plaintiffs in *Kempthorne* alleged that they had viewed the species at issue in the Beaufort Sea region, enjoyed doing so, and had plans to return. *Id.* at 707–08. The *Kempthorne* plaintiffs' alleged interest in the species tracks the statements made by Plaintiffs in this case to establish interest in the species at issue, but that is where the similarities between the two cases end. In *Kempthorne*, the Ninth Circuit found that the challenged incidental take regulations threatened "imminent, concrete harm to these interests by destroying polar bears and walrus in the Beaufort Sea." *Id.* at 708. Additionally, the Ninth Circuit found "this injury is geographically specific, is caused by the regulations at issue, and is imminent. The plaintiffs in that action did not challenge

REPLY MEM. IN SUPPORT OF DEFS.' MOT. TO DISMISS                                        4
No. 3:21-cv-01182-JCS

the 'regulation in the abstract.'" *Id.* (quoting *Summers*, 555 U.S. at 494). The same cannot be said in this case.

Here, nothing as concrete or imminently threatening as incidental "take" regulations (or any specific management decisions, for that matter) is being challenged. There is no similar concrete action creating a probabilistic risk of harm to Plaintiffs or the species at issue in this case. To the contrary, Plaintiffs will face none of the alleged harm unless and until future actions are taken that would be separately challengeable in court (i.e., future management decisions, like a final incidental take regulation, which could potentially affect the likelihood of population declines). Here, Plaintiffs are challenging the agency's failure to act on informational summaries "in the abstract" and relying on an attenuated chain of causation to establish injury.

Plaintiffs argue that an allegation of future injury may suffice if the harm is "certainly impending" or there is a "substantial risk" that the harm will occur. Pls.' Br. at 6 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). But other than a tenuous chain of conclusory statements about the likelihood of future decision-making outcomes, Plaintiffs have not shown and cannot show that the harms alleged are "certainly impending," or there is a "substantial risk" they will occur. As the Supreme Court has explained, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original). "'[A]llegations of *possible* future injury' are not sufficient." *Id.* (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Plaintiffs' allegations fall into this category: allegations of possible future injury that at this point are wholly speculative. Just like in *Clapper*, Plaintiffs "only speculate as to how the [agency] will exercise [its] discretion in"

REPLY MEM. IN SUPPORT OF DEFS.' MOT. TO DISMISS                                      5
No. 3:21-cv-01182-JCS

making future management decisions that use information from the SARs. 568 U.S. at 412; *see id.* at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."); *see also* Defs.' Br. at 15 (describing the attenuated chain of events Plaintiffs rely upon, involving future actions within the discretion of agency decision-makers).

### ii. Plaintiffs Do Not Adequately Allege Informational Standing

Defendants agree that Plaintiffs can establish informational injury when they are denied information to which they would otherwise be entitled under the pertinent statute. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) (addressing the Federal Election Campaign Act); *Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 449 (1989) (addressing the Federal Advisory Committee Act); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (addressing the Fair Housing Act of 1968). However, Defendants disagree that MMPA section 117 grants a concrete right to information that Plaintiffs have been denied.

Section 117 of the MMPA is unique and clearly distinguishable from the statutes in the cases that Plaintiffs relied upon in their Brief. The Court in *Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105 (N.D. Cal. 2017) found informational standing existed where the Global Change Research Act of 1990 required Executive Branch officials to submit to Congress and make available to the public a revised research plan every three years. The statute did not give the officials any discretion as to whether the research plan should be revised. The publication requirement under section 117 of the MMPA, by contrast, hinges on a discretionary decision by the agency that a SAR needs revision. If the agency determines, using the best scientific information available, that a SAR does not need to be revised, no publication requirement is triggered. Plaintiffs therefore are not entitled to the limited public information

REPLY MEM. IN SUPPORT OF DEFS.' MOT. TO DISMISS            6
No. 3:21-cv-01182-JCS

related to draft revised SARs and final revised SARs, 16 U.S.C. § 1386(b), unless the Service determines a SAR needs revision, which it has not done here for six of the nine SARs. As for the other three SARs, Plaintiffs had the opportunity to view the revised draft SARs and will have the same opportunity when the final revised SARs are issued.[3]

The court in *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 420 (9th Cir. 2020) found that informational standing existed under section 325 of the Department of Interior and Related Agencies Appropriations Act. The court described how section 325 created an intertribal consortium to provide Alaskan health services, and the Executive Committee of the consortium later adopted a restrictive Disclosure of Records and Information Policy that deprived the plaintiff of information necessary to exercise effectively its governance and participation rights. The court addressed an entirely different factual scenario, statutory framework, and type of defendant (a statutorily-created intertribal consortium) than in this case. Plaintiffs here cannot possibly allege governance rights, nor can they allege an interest in participation akin to the "ability to effectuate . . . meaningful Indian self-determination" that established informational standing for the *Southcentral* plaintiff. 983 F.3d at 418.

Section 117 of the MMPA is also different from statutes that Congress enacted primarily to ensure public access to information, like the Freedom of Information Act ("FOIA") in Plaintiffs' cited case *Animal Legal Def. Fund v. United States Dep't of Agric.*, 935 F.3d 858 (9th Cir. 2019). *See Nat'l Lab. Rels. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry."). Rather, the primary purpose

---

[3] The Service has already promulgated draft revised SARs for the Southern sea otter, Chukchi/Bering Sea and Southern Beaufort Sea polar bear stocks. The final revised SARs for all three stocks were delivered on June 17, 2021 to the Office of the Federal Register for imminent publication.

REPLY MEM. IN SUPPORT OF DEFS.' MOT. TO DISMISS   7
No. 3:21-cv-01182-JCS

of MMPA section 117 is to inform agency management of incidental taking of marine mammals in the course of commercial fishing operations. *See* Defs.' Br. at 12–13 (describing legislative history to illuminate Congress's intent for section 117).

Contrary to Plaintiffs' assertion, Defendants are not "creat[ing] an incentive to break the law" or "enabling an agency . . . to evade judicial review by never reviewing or publishing a draft SAR." Pls.' Br. at 10. Defendants are simply complying with the sequential procedural structure that Congress created in MMPA section 117. *Friends of Animals v. Jewell*, 828 F.3d 989 (D.C. Cir. 2016), provides an excellent explanation from a sister circuit.[4] There, the court held that the plaintiffs did not establish informational injury because the Service had to make a certain finding under section 4 of the Endangered Species Act ("ESA") before the plaintiffs could have any potential claim to information. *Id.* at 993 ("By adopting this sequential procedural structure, Congress placed the Secretary under no obligation to publish any information in the Federal Register until after making a 12-month finding."). In *Friends of Animals*, the only argument that the plaintiffs raised on appeal was whether they had informational standing. Although the court noted that the plaintiffs may have had some other type of standing, the plaintiffs did not have informational standing because they did not have the right to the information associated with the 12-month finding until the Service made the finding. *Id.* at 995. Like ESA section 4, MMPA section 117 has a Congressionally-intended "sequential structure" for when the disclosure of information is required. The Service is not required to

---

[4] In their Brief, Plaintiffs misunderstand the holding from this case and inappositely cite to an identically-named but different case for support: *Friends of Animals v. Jewell*, 824 F.3d 1033 (D.C. Cir. 2016). Pls.' Br. at 10–11. Plaintiffs' *Friends of Animals* case addressed an entirely different section of the ESA—section 10(c) involving notice and review for "take" exemption applications—which explicitly requires information received by the agency to be made available to the public.

REPLY MEM. IN SUPPORT OF DEFS.' MOT. TO DISMISS                                    8
No. 3:21-cv-01182-JCS

publish any information until it makes a determination that a revision is warranted and provides a copy of the draft revised SAR for public comment. 16 U.S.C. § 1386(b). Until then, there is no disclosure requirement. However, unlike ESA section 4, which requires a finding within a certain timeframe (12 months), the MMPA does not require the Service to revise SARs within a specified timeframe.

### iii.  Plaintiffs Do Not Adequately Allege Procedural Standing

The primary missing element from Plaintiffs' procedural standing argument is a concrete interest that is affected by the alleged deprivation. The Supreme Court has held that a procedural right *in vacuo* is insufficient to create Article III standing. *Summers*, 555 U.S. at 496. In other words, the alleged deprivation of a procedure such as notice and comment is not enough on its own. *See id.*; *see also Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1260 (9th Cir. 2010).

Plaintiffs claim that they have "specific injuries tied to their inability to participate in the public comment process" because they "regularly comment on . . . draft [SARs]." Pls.' Br. at 12 (internal quotation marks omitted). This is exactly the kind of circular argument that the Supreme Court disallowed in *Summers*. Plaintiffs also claim that the Service's "procedural failures" hamper their "work to protect marine mammals from bycatch in fisheries." Pls.' Br. at 13. They support this vague claim with incorrect information,[5] but do not tie the "procedural

---

[5] Plaintiffs incorrectly state that "SARs . . . set[] a limit on the number of animals that can be killed." Pls.' Br. at 13. Plaintiffs have failed to point to any support in the MMPA for this proposition as a matter of law. The information contained in SARs can be used to help agency management determine whether take reduction plans for commercial fisheries are warranted, but that does not mean that SARs themselves set take limits.

Moreover, Plaintiffs do not refer to any species or stock under the Service's jurisdiction (as opposed to NMFS's jurisdiction) that have been impacted in the context of regulation of commercial fisheries under MMPA section 118.

failures" to any particular action or decision that has injured them, beyond their inability to comment on the SARs.

Plaintiffs cite to *Brennan* for their argument that procedural injury can arise from the inability to provide public comment. Pls.' Br. at 9. In *Brennan*, the Court found that the government's failure to produce a revised research plan within the statutory deadline deprived the plaintiffs of their ability to participate in the statutorily-required public participation process. 571 F. Supp. 2d at 1116. The Court addressed the argument that Defendants are making here—that if the government never produced a research plan, the plaintiffs would never have any right to engage in consultation or public comment, and therefore would never suffer a procedural injury. *Id.* In *Brennan*, the Court found this argument unpersuasive. *Id.* However, as explained above, the statute at issue in *Brennan* imposed an affirmative duty on the government, with no discretion, to produce the revised research plan by certain deadlines and involved a clear Congressional intent for the public to participate in and consult on the revised plan. By contrast, MMPA section 117 gives the public no right to participation in SAR reviews, and gives the Service discretion as to whether a SAR needs to be revised. *See* 16 U.S.C. § 1386(b), (c). The procedural right to notice and comment is only triggered if the Service determines revision is warranted and publishes a draft revised SAR in the Federal Register. *Id.* § 1386(b)(1). For six of the nine SARs at issue in this case, the Service has not determined that a revision is warranted. For the other three SARs, the Service already published those draft revised SARs and Plaintiffs had an opportunity to comment on them; there was no deprivation of their procedural rights.

In a footnote, Plaintiffs raise a recent D.C. Circuit opinion to try to differentiate this case and overcome the *Summers* hurdle. Pls.' Br. at 12, n.3 (citing *Ctr. for Biological Diversity v. Haaland*, No. 20-5088, 2021 U.S. App. LEXIS 15619 (D.C. Cir. 2021)). Although this decision

REPLY MEM. IN SUPPORT OF DEFS.' MOT. TO DISMISS                    10
No. 3:21-cv-01182-JCS

is unpublished and out of circuit, it is directly on point here. Plaintiff in *Ctr. for Biological Diversity v. Haaland* claimed an informational injury because the Service's failure to provide notice and comment on an ESA section 4-related, internal "Framework" deprived it of information that the ESA allegedly required the Service to disclose. LEXIS 15619 at *3. However, the D.C. Circuit determined that the "failure to provide for notice and comment on the Framework is a procedural injury that on its own does not confer standing." *Id.* The court went on: "[Plaintiff] does not allege that the failure to follow the procedures has resulted in any particular decision or action that has injured [it]." *Id.* at *4. Because the plaintiff's challenge to "the forgone notice and comment" was "untethered to any particular proceeding or decision in which the Framework" was used, the court found no informational or procedural standing. *Id.* Similarly here, Plaintiffs have failed to demonstrate that they have suffered any harm from any particular decision or action as a result of the Service's determination not to revise SARs.

In an attempt to distinguish this case, Plaintiffs seem to misunderstand the holding of the D.C. Circuit case and misstate the requirements of the MMPA. Plaintiffs state "[t]his case also differs from [*Ctr. for Biological Diversity v. Haaland*], in which there was no procedural standing for endangered species listing guidelines because the procedure did not protect any concrete interests . . . ." Pls.' Br. at 12, n.3. However, as explained above, the court did *not* find that the "procedure did not protect any concrete interests" but rather that the plaintiff had failed to *adequately allege* any concrete interests, just as the Plaintiffs fail to do in this case. Plaintiffs go on to say that the MMPA is different, implying it does protect concrete interests, because "the MMPA requires SARs that establish potential biological removal levels, which agencies use to

determine negligible impacts when permitting activities." *Id.* This is not quite accurate.[6]

Regardless of Plaintiffs' inaccurate statements about the legal framework of the MMPA, as a threshold matter, Plaintiffs have failed to allege that the deprivation of notice and comment has resulted in any *particular* decision or action that has injured them.

### B. Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted Regarding Review of all Nine SARs and Revision of Six SARs

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept as true a "legal conclusion couched as a factual allegation." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In their Brief, Plaintiffs emphasize that they are separately challenging the Service's duty to *review* SARs and the Service's duty to *revise* SARs. Pls.' Br. at 17. As to the duty to review SARs, Plaintiffs have not and cannot allege more than conclusory statements that are unable to survive a motion to dismiss. As to the Service's discretionary duty to revise SARs, Plaintiffs have not stated a claim for which this Court can grant relief as to six of the nine SARs.

Plaintiffs are correct that the Service has a nondiscretionary duty to review SARs

---

[6] Section 101(a)(5) of the MMPA does not require the Service to use potential biological removal levels from the SARs when making a "negligible impact" finding. The Service uses the best available science when evaluating the statutory requirements for each determination under the MMPA, which does not necessarily include information contained in the SARs. *See, e.g.*, Taking Marine Mammals Incidental to Geophysical Surveys Related to Oil and Gas Activities in the Gulf of Mexico, 86 Fed. Reg. 5322, 5346–47 (Jan. 19, 2021) (responding to a public comment, NMFS explains why population abundance estimates in a SAR were not the best available scientific information for the circumstances and therefore not used for making a determination related to an incidental take regulation). The MMPA requires only that SARs provide a minimum population estimate, which is in turn used to formulate a potential biological removal level, which is then required by section 118 of the MMPA for certain uses in the management of marine mammal take incidental to commercial fisheries. Furthermore, contrary to Plaintiffs' inaccurate assertions, SARs do not "set levels of take." Pls.' Br. at 12, n.2.

annually or triennially. 16 U.S.C. § 1386(c)(1). It is important to note that Congress wrote this provision such that the review is done internally by the Service and the information is kept internally with the agency. The statute does not require the Service to share any information about annual or triennial reviews with the public. Therefore, Plaintiffs have no way of knowing whether their allegations are true and are relying on pessimistic assumptions with no proof beyond "threadbare recitals" of the MMPA's requirement "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Plaintiffs argue that their "Complaint adequately states a claim that the Service has failed to review SARs annually for polar bear, manatee, walrus, and two sea otter . . . stocks and triennially for two other Alaskan sea otter stocks," Pls.' Br. at 18, but this is as much information as the Plaintiffs can give to support their claim. The Court is not required to accept this "legal conclusion couched as a factual allegation" as true.

Regarding the Service's duty to revise SARs, the statute requires the Service to revise a SAR only if the Service determines during review "that the status of the stock has changed or can be more accurately determined." 16 U.S.C. § 1386(c)(2). The plain language of the statute shows that it is within the Service's authority and discretion to determine whether this statutory standard has been met and a revision is required. Plaintiffs want to take this discretion away from the Service. They ask the Court to read the duty to revise six of the nine SARs as "nondiscretionary" based on their judgment that "the status of each stock has changed." Pls.' Br. at 18–19. This argument assumes that Plaintiffs' knowledge of the best available scientific information is superior to the Service's knowledge. In asking the Court to view the duty to revise as nondiscretionary, Plaintiffs are asking the Court to grant relief that it is not legally able to

REPLY MEM. IN SUPPORT OF DEFS.' MOT. TO DISMISS         13
No. 3:21-cv-01182-JCS

grant as to six of the nine SARs.[7] The Court cannot order the Service to accept Plaintiffs' information as the best available scientific information nor compel the Service to make revisions where the Service has not determined that revisions are warranted. At most, this Court could only order the Service to perform its mandatory reviews of the six SARs and reconsider whether revisions are warranted, which is not the relief that Plaintiffs' Complaint seeks. ECF No. 1 at 15, ¶ 2 (requesting "[a]n order compelling the Service to revise the stock assessment reports for the [nine stocks] by dates certain"). Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted as to six of the nine SARs.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss should be granted, Plaintiffs' Complaint should be dismissed, and judgment should be entered in favor of Defendants.

Dated: June 21, 2021                                Respectfully Submitted,

                                                    JEAN E. WILLIAMS,
                                                    Acting Assistant Attorney General
                                                    SETH M. BARSKY, Section Chief
                                                    MEREDITH L. FLAX, Assistant Section Chief

                                                    /s/ Taylor A. Mayhall
                                                    TAYLOR A. MAYHALL
                                                    Trial Attorney, MN Bar No. 0400172
                                                    U.S. Department of Justice
                                                    Environment & Natural Resources Division
                                                    Wildlife & Marine Resources Section
                                                    P.O. Box 7611
                                                    Washington, D.C. 20044-7611
                                                    Tel: (202) 598-3796
                                                    taylor.mayhall@usdoj.gov

                                                    *Attorneys for Defendants*

---

[7] For the Southwest, Southcentral, and Southeast Alaska stocks of Northern sea otters, the Pacific walrus stock, and the Florida and Puerto Rico stocks of West Indian manatee, the Service has not determined that revision is warranted. For the other three stocks, the Service has promulgated draft revised SARs and final revised SARs are forthcoming. *See supra* n.3.

**ATTESTATION OF CONCURRENCE**

In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that I obtained concurrence in the filing for the signatures of all counsel indicated by a conformed signature ("/s/") within this e-filed document.

/s/ *Taylor A. Mayhall*
TAYLOR A. MAYHALL
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/ *Taylor A. Mayhall*
TAYLOR A. MAYHALL, Trial Attorney
MN Bar No. 0400172
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station. P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 598-3796
Fax: (202) 305-0275
Email: taylor.mayhall@usdoj.gov