1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7   CENTER FOR BIOLOGICAL                Case No. 21-cv-01182-JCS
    DIVERSITY, INC., et al.,
8
             Plaintiffs,                 **ORDER REGARDING MOTION TO
9                                        DISMISS**
          v.
10                                       Re: Dkt. No. 17
    DEBRA HAALAND, et al.,
11
             Defendants.
12

13  **I.      INTRODUCTION**

14          Plaintiffs Center for Biological Diversity ("CBD") and Turtles Island Restoration Network

15  ("TIRN") bring this case against Defendants the Secretary of the U.S. Department of Interior,

16  Debra Haaland,[1] in her official capacity and the U.S. Fish and Wildlife Service (the "Service"),

17  asserting that Defendants failed to revise the Stock Assessment Reports ("SARs") for nine stocks

18  of protected mammals—certain populations of sea otters, polar bears, walruses, and manatees—as

19  required by the Marine Mammals Protection Act ("MMPA") and the Administrative Procedure

20  Act ("APA").  Compl. (dkt. 1) ¶ 1.  Defendants move to dismiss for lack of Article III standing

21  and failure to state a claim on which relief may be granted, citing only Rule 12(b)(6) of the

22  Federal Rules of Civil Procedure in their motion, but also addressing Rule 12(b)(1) in their reply.

23          The Court held a hearing on July 23, 2021, where the parties agreed that the case is moot

24  as to three of the stocks at issue (the southern sea otter, Chukchi/Bering Seas polar bear, and

25  Southern Beaufort Sea polar bear) because Defendants have now published revised SARs for

26

27  ───────────────

28  [1] Haaland has been confirmed as Secretary of the Interior since this case was filed, and is therefore
    automatically substituted for former Acting Secretary Scott de la Vega under Rule 25(d) of the
    Federal Rules of Civil Procedure.

United States District Court
Northern District of California

those stocks. Defendants' motion to dismiss is therefore GRANTED to the extent Plaintiffs' claim is based on those stocks. As for the other stocks at issue, while Plaintiffs have sufficiently alleged constitutional standing, Defendants' motion is GRANTED under Rule 12(b)(6) for the reasons discussed below, and Plaintiffs' claims are DISMISSED with leave to amend.[2]

## II.    BACKGROUND

### A.    Statutory Framework

Under the MMPA's framework, the Service has a nondiscretionary duty to review SARs for strategic stocks on an annual basis and for non-strategic stocks on a triennial basis. 16 U.S.C. § 1386(c)(1)(A)–(B). To conduct these internal reviews, the Service must utilize the "best scientific information available" to assess whether a SAR should be revised for each stock. *Id.* § 1386(a), (c)(2); *see* Mot. (dkt. 17) at 5 (acknowledging that the "best scientific information" standard applies to internal reviews). If the Service's review indicates that "the status of the stock has changed or can be more accurately determined," the Service must issue a revised stock assessment report. 16 U.S.C. § 1386(c)(2). In doing so, the Service must publish "a notice of availability"—which "include[s] a summary of the assessment and a list of the sources of information or published reports upon which the assessment is based"—"of a draft stock assessment report or any revision thereof and provide an opportunity for public review and comment during a period of 90 days." *Id.* § 1386(b)(1). The Service shall then publish in the Federal Register "a notice of availability and a summary of the final stock assessment or any revision thereof, not later than 90 days after . . . the close of the public comment period on a draft stock assessment or revision thereof." *Id.* § 1386(b)(3).

Under the APA, a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," meaning that an underlying statutory claim must be sufficiently pleaded to give rise to a cause of action. 5 U.S.C. § 702. For the purpose of an APA claim, an agency action includes the "failure to act," and the court is vested with the authority to remedy such a

---

[2] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

failure by "compel[ling] agency action unlawfully withheld or unreasonably delayed." *Id.* §§ 551(13), 706(1).  Under 5 U.S.C. § 706(1), "federal courts may order agencies to act only where the agency fails to carry out a mandatory, nondiscretionary duty."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004) (citation and internal quotation marks omitted).  Judicial review of an agency's failure to carry out a non-discretionary duty is limited to specific statutory requirements, because enforcing compliance with broad statutory terms would amount to the court's overseeing an agency's "day-to-day" management.  *Id.* at 66–67.  A court may also remedy an APA claim by "hold[ing] unlawful and set[ting] aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," among other potential defects that can warrant such relief.  5 U.S.C. § 706(2).

### B.    Plaintiffs' Complaint

#### 1.    Claim Asserted

Plaintiffs allege that Defendants: (1) did not complete timely reviews for six of the nine stocks at issue (the northern sea otters of southwest, southcentral, and southeast Alaska, Florida manatee, Antillean manatee of Puerto Rico, and Pacific walrus); and (2) did not produce a timely final draft for three of the nine stocks at issue (the southern sea otter, Chukchi/Bering Sea polar bear, and Southern Beaufort Sea polar bear).  Compl. at 10–13.  Because the parties agree that Plaintiffs' claim as to the latter three stocks is now moot, this order does not address them in detail.  Four of the six stocks that remain at issue (the northern sea otter of southwest Alaska, Florida manatee, Antillean manatee, and Pacific walrus) are designated by the MMPA as strategic and must be reviewed on an annual basis, while the other two stocks that remain at issue (the northern sea otters of both southcentral Alaska and southeast Alaska) are designated as non-strategic and must be reviewed every three years.  *Id.* at 9–10.

Plaintiffs allege that this failure constitutes agency action which is unlawfully withheld or unreasonably delayed, which has caused them and their members informational and procedural injuries, and which ought to be compelled by this Court.  *Id.* at 14.  In the alternative, Plaintiffs also allege that the Service's failure to act is "arbitrary and capricious and not in accordance with procedures required by law."  *Id.*

### 2.    Marine Mammal Stocks at Issue

The Service has not published a revised SAR for the northern sea otters of southwest Alaska (a strategic stock), southeast Alaska, and southcentral Alaska (non-strategic stocks) since 2014. *Id*. at 10 (citing 79 Fed. Reg. 22,154 (Apr. 21, 2014)). Plaintiffs allege the stocks of each of these species has changed in the interim, and provide as examples that "the Secretary of the Interior has issued offshore oil and gas leases and approved seismic surveys in Alaska that negatively affect northern sea otter stocks," and that "new information has become available regarding climate-induced changes to sea otter habitat and food availability as well as the impacts of the fishing industry on food availability and sea otter mortality." *Id*. at 11.

The Service has not published a revised SAR for the Pacific walrus (a strategic stock) since 2014. *Id*. at 11. Plaintiffs allege that new population estimates suggest this stock's population is declining due to the loss of sea ice upon which the walruses depend, and that studies also indicate "melting sea ice will continue to have increasingly detrimental consequences to the Pacific walrus." *Id*. at 12. Plaintiffs add that researchers report observing female walruses "spending more time in the southwestern region of the Chukchi Sea due to changes in sea ice availability, resulting in less time resting and foraging, and likely resulting in reduced female walrus body condition," a trend which will likely continue as sea ice retreats to higher latitudes. *Id*. Lastly, Plaintiffs allege "new information regarding the impacts of ocean acidification on Pacific walrus populations has been published by the scientific community," and that oceanic "acidification is driving changes in prey availability for walruses and therefore negatively impacting walrus populations." *Id*. at 13.

The Service has not published a revised SAR for the Florida manatee and Antillean manatee (both strategic stocks) since 2014. *Id*. at 11. Plaintiffs allege that "[m]anatees face increasing threats to their existence, including from watercraft-collision-related deaths," which resulted in at least 637 manatee deaths in Florida's waterways in 2020 and "one of the deadliest years for manatees" in 2019. *Id*. at 13. Plaintiffs add that "[m]anatees in both the southeastern United States and Puerto Rico also face increasing threats from habitat loss and climate change" which negatively impacts the manatees and their surrounding habitat, the loss of the manatee's

warm water refuge is being worsened by climate-change-induced cold fronts, harmful algal blooms are being worsened by increased precipitation and temperature, and tropical storms in increasing frequency and intensity may cause stranding and calf separation as well as the destruction of their seagrass feeding grounds. *Id*.

### 3. Allegations Regarding Standing

#### a. Representational and Organizational Injury

Plaintiffs allege that their interests and those of their members are harmed by the Service's failure to publish revised SARs.

CBD is a nonprofit conservation organization headquartered in Oakland, California which is "dedicated to the preservation of biodiversity, native species, and ecosystems," and which has 84,000 members, many of whom "reside in and/or visit the coastal areas of California, Florida, Puerto Rico, and Alaska and adjoining marine waters where the marine mammals in this case occur," and all of whom "use the ocean and coastal areas for research, aesthetic enjoyment, observation, and other recreational scientific, and educational activities." *Id*. at 3. Plaintiffs allege that CBD and its staff and members review scientific information about "marine mammals and regularly comment on actions affecting marine mammals, including draft stock assessment reports." *Id*. Regarding the specific marine mammal stocks at issue, Plaintiffs allege:

> [CBD] members and staff have researched, observed, photographed, enjoyed the habitat of, and sought protection for the polar bear, walrus, and sea otter in Alaska. [CBD] members and staff have also regularly visited the shores and waters of California to observe, study, and enjoy California sea otters. [CBD] members and staff have visited the habitat of the Antillean and Florida manatees, sought to observe manatees, and enjoyed manatees in their marine environment. [CBD] members will continue to visit those areas in the future to appreciate these marine mammals and their ocean and coastal environment. [CBD] members and staff derive scientific, recreational, conservation, and aesthetic benefits from the existence of these marine mammals in the wild. [CBD] and its members also derive benefits from information about and opportunities for public participation concerning marine mammals.

*Id*.

TIRN is a Marin County, California-based non-profit corporation with a similar commitment to the "study, protection, enhancement, conservation, and preservation of the world's

marine and terrestrial ecosystems and the wildlife that inhabit the oceans, including marine mammals." *Id*.  TIRN has 114,000 supporters globally, including "research biologists, eco-tour operators, and professional photographers and videographers, all of whom rely on healthy populations of marine mammals to conduct their business." *Id*.  Regarding the regions where the specific marine mammal stocks at issue occur, Plaintiffs allege that "TIRN's members and staff regularly use the coastal waters of the western United States, Alaska, Florida, and Puerto Rico for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities," and that many members and staff "spend time on the shores or in the waters of these areas engaging in a number of wildlife-viewing activities, including swimming, snorkeling, kayaking, scuba diving, and wildlife watching." *Id*. at 3–4.  Lastly, Plaintiffs allege that "TIRN's members and staff intend to continue to study, visit, and observe—or attempt to study, visit, and observe—these species in the future." *Id*. at 4.

b.      Procedural and Informational Injury

Plaintiffs also allege they are suffering procedural and informational injuries due to the Service's failure to review and publish revised SARs because the MMPA's requirements for such revisions are intended to "ensure that marine mammals are not adversely affected by decisions based on obsolete information" and, since "Plaintiffs have concrete interests in ensuring up-to-date stock assessments, Plaintiffs' interests are adversely affected by the Service's failure to fulfill its procedural duties under the MMPA to timely update the stock assessment reports." *Id*. at 4–5. Plaintiffs allege that "the Service's failure to prepare these stock assessment reports [renders Plaintiffs] unable to use the information contained in the report and . . . unable to participate in the public comment process." *Id*. at 5.  Plaintiffs assert injury on the basis that the MMPA's requirements for SAR revision "were designed to promote public participation and information, as demonstrated by the public comment requirement [and because] Plaintiffs and their members research and promote conservation of marine mammals, this information and participation is useful to Plaintiffs to carry out their organizational missions." *Id*.

c.      Causation

Plaintiffs allege they are adversely affected by the Service's failure to review and revise

6

United States District Court
Northern District of California

1    SARs for the species within their jurisdiction because "outdated stock assessments result in

2    management decisions that are less informed and often less protective of these marine mammal

3    populations than they would [otherwise] be [and] because many of these stocks have either

4    declined since their most recent stock assessment or are now subject to newly identified and often

5    greater threats, the lack of updated stock assessments increases the risks to these species." *Id*. at

6    4.  This lack of updated information, Plaintiffs allege, "result[s] in activities being permitted that

7    adversely affect the survival and recovery of these species and increase the chances that

8    population declines and other adverse impacts to these animals will occur but will go unnoticed

9    and/or unaddressed." *Id*.  The resulting harm to stocks in which Plaintiffs have an interest creates

10   injury to Plaintiffs and their members "by reducing the likelihood that [they] will be able to

11   continue to observe, research, and enjoy these marine mammals in their natural environment." *Id*.

12                    d.       Redressability

13          Plaintiffs allege that their injuries are redressable through declaratory and injunctive relief

14   because "[a]n order compelling the stock assessment reports by a date certain will reduce the

15   likelihood that excessive take of marine mammals will be authorized." *Id*. at 5.  If such an order is

16   granted, Plaintiffs allege that the resulting revised SARs will provide Plaintiffs with access to the

17   SARs' information and the opportunity to participate in commenting, and result in taking

18   authorizations which "better reflect the limits that the stocks can sustain at this time" and make it

19   "less likely that the marine mammals at issue will be adversely affected." *Id*.

20          **C.**   **Defendants' Motion to Dismiss**

21          Defendants argue that Plaintiffs' complaint should be dismissed for failure to establish

22   standing as to all of the SARs at issue and for failure to state a claim upon which relief can be

23   granted under Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure.  Mot. at 1–4.

24                  **1.**     **Arguments Regarding Standing**

25          Defendants argue that Plaintiffs have failed to adequately allege the three elements

26   required for standing: injury in fact, causation, and redressability.

27                    a.       Injury in Fact

28   Defendants argue that neither CBD nor TIRN has presented sufficient allegations to

establish either representational or organization injury.  *Id*. at 7–8.  As to representational injury, Defendants argue that both Plaintiffs only make "vague and generalized" allegations as to how their members and staff interact with the nine species at issue.  *Id*. at 8.  First, Defendants argue that Plaintiffs fail to identify any specific individual members with "concrete plans to study, teach about, view, or visit any of the nine species at-issue," and refer only to categories of people such as researchers, tour operators, and videographers.  *Id*. at 8.  Defendants suggest that without "stating how these people . . . will be 'directly affected [by the challenged inaction] apart from their special interests in the subject,'" Plaintiffs have not sufficiently alleged standing.  *Id*. at 9 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992)) (brackets in original).  Next, Defendants argue that Plaintiffs' alleged injuries are not "actual or imminent," and that Plaintiffs "have not given, and cannot give, an example of how their members are currently suffering" a lack of access to the marine mammals at issue.  *Id*.  Citing *Lujan*, Defendants contend that Plaintiffs have not alleged the sort of specific "imminent" harm necessary to substitute for actual harm.  *Id*.

Defendants also argue Plaintiffs fail to establish organizational injury, which requires that "[a]n organization . . . suffered both a diversion of its resources and a frustration of its mission," rather than "simply a setback to the organization's abstract social interests."  *Id*. at 10 (quoting *La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010); *Project Sentinel v. Evergreen Ridge Apartments*, 40 F. Supp. 2d 1136, 1138 (N.D. Cal. 1999)) (internal quotation marks omitted).  Defendants contend that both CBD and TIRN's stated conservational and protective objectives "purport to establish a connection to the species at-issue, but do nothing to establish a concrete and demonstrable injury to either organization's activities," and fail to allege any "diver[sion of] resources, how a specific program has been affected, or how the overall social missions have been or will imminently be impacted in any way" by the alleged failures of Defendants.  *Id*. at 10–11.

Turning to a theory of procedural injury, Defendants argue that Plaintiffs misconstrue the MMPA's procedural requirements to include a procedural right to timely update SARs, while in fact, the MMPA "creates a right to public comment only for draft revised SARs," and that the Service is only required to publish those drafts "when it has determined during review that a

United States District Court
Northern District of California

stock's status has changed or can be more accurately determined." *Id*. at 12 (citing Compl. ¶ 16; 16 U.S.C. § 1386(b)(1)).  Here, Defendants argue, Defendants argue that "because the Service has not issued draft revised SARs [for the six stocks that remain at issue], Plaintiffs do not yet have any procedural rights to them under section 117, and therefore cannot allege that they have been deprived of these procedural rights." *Id*.

Similarly, Defendants argue that Plaintiffs fail to allege informational injury because Plaintiffs were not denied access to any information to which they had a right under the MMPA. In Defendants' view, the only information to which Plaintiffs have a right is the content of the draft revised and finalized SARs as well as a notice of availability and a summary of the final revised SAR, and because the Service has determined that for six of the nine stocks, a draft revised SAR is not yet due, Plaintiffs do not yet have any informational rights to them under the MMPA. *Id*. at 13–14 (citing 16 U.S.C. § 1386(b)–(b)(3)).  Defendants respond to what they regard as Plaintiffs' "faulty premise that updated or new information is available for review, and therefore, the Service should have already determined to revise all nine SARs, which would have entitled Plaintiffs to procedural and informational rights for the draft and final revised SARs," by arguing that this premise relies on an assumption that updated or new information exists, and that any information that does exist is the "best scientific information available" per the MMPA's requirements.  *Id*. (citing 16 U.S.C. § 1386(b)(3)).  Lastly, Defendants cite *Friends of Animals v. Jewell*, 828 F.3d 989 (D.C. Cir. 2016), in support of the premise that a plaintiff, like those here, does "not suffer informational injury where [the] challenged statutory provision [does] not yet entitle [that] plaintiff to information until certain further findings [are] made by the agency, even though plaintiff alleged those findings should have been made already." *Id*. at 14–15.

b. Causation

Defendants argue that Plaintiffs fail to establish causation, the second element of standing, because the causal chain Plaintiffs have alleged between outdated stock assessments and their members' reduced ability to interact with marine mammals is "too speculative" and "extremely lengthy and entirely vague and hypothetical." *Id*. at 15.  Defendants further contend that Plaintiffs fail to isolate either particular management decisions which rely on information in the SAR or

particular activities which would adversely impact these species if permitted, and instead rely on "pessimistic assumptions about vague 'management decisions' and future discretionary permitting decisions that are not challenged and cannot be addressed by this lawsuit." *Id.*

                c.       Redressability

With respect to the element of redressability, Defendants argue that Plaintiffs have not alleged sufficiently that their requested relief—an order compelling the SARs by a certain date—is *likely* to redress the injuries alleged, because the injuries alleged directly flow from management decisions which ought to be challenged separately at the time of their occurrence. *Id.* at 16. Defendants argue that challenging the actual management decisions would be "much more 'likely to redress' [Plaintiffs'] alleged injuries." *Id.* Defendants further argue Plaintiffs have not shown and cannot show that the court has the power to grant the relief being sought—an order compelling the SARs by a certain date—because "the MMPA requires revised stock assessment reports only where a review has found that the stock's status 'has changed or can be more accurately described.'" *Id.* Defendants contend that "the Court cannot order the Service to revise these six SARs where the Service has not determined that revisions are warranted based on the best scientific information available." *Id.* at 17. Defendants acknowledge that the Court could order the Service to perform a mandated review (as opposed to revision) of these six stocks within the statutorily established annual time frame, but argue that the Service will be doing such reviews regardless and the Plaintiffs have not requested such relief. *Id.*

**2.       Arguments Regarding Failure to State a Claim**

Along the same lines as their arguments regarding the Court's power in the context of redressability, Defendants contend that Plaintiffs have failed to state a claim upon which relief can be granted because "Defendants have not determined revision is required and so no duty to revise has arisen under the MMPA," which only requires the Service to revise stock assessment reports if and whenever the review indicates that a stocks status "'has changed or can be more accurately determined.'" *Id.* at 1, 17 (quoting 16 U.S.C. § 1386(c)(2)). Defendants emphasize that revisions to SARs under the MMPA take place on an as-needed basis, while internal reviews to determine whether revisions are needed take place within the one– and three-year timeframes for strategic

and non-strategic stocks.  *Id*. at 18.  Defendants argue Plaintiffs have failed to state a claim for which relief can be granted because their reviews are on schedule to be completed this year for the northern sea otter of southwest, southcentral, and southeast Alaska, Florida manatee, Antillean manatee of Puerto Rico, and Pacific walrus stocks.  *Id*. at 5 (citing 16 U.S.C. § 1386(c)(2)).  Defendants further contend that the APA cannot provide the basis of a freestanding claim in the absence of any violation of the MMPA.  *Id.* at 18.

### D.  Plaintiffs' Opposition

#### 1.  Arguments Regarding Standing

In their opposition, Plaintiffs state they have fulfilled the three elements of Article III standing.  Opp'n (dkt. 20) at 1.

#### a.  Injury in Fact

Plaintiffs argue that they have representational standing based on injuries to their members' interests in and concrete future plans to enjoy the marine mammal stocks at issue, which Plaintiffs have alleged could be harmed by uninformed management decisions.  *Id.* at 5–8 (citing *Center for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009), in which CBD's members established standing based on their observational and aesthetic enjoyment of the polar bears threatened by a challenged regulation).  Plaintiffs contend that they therefore meet the test for representational standing in that their members having standing to sue in their own right, the interests in question are germane to the organizations' purposes, and the lawsuit does not require participation by individual members.  *Id*. at 5.  Plaintiffs argue the complaint sufficiently details the risk that outdated assessments would result in less protective management decisions that imminently harm the stocks' sustainability.  *Id*. at 8.

In the alternative, Plaintiffs contend that they have suffered informational injury because the MMPA mandates the publication of timely SARs in the event of occurrences including new population estimates and threats to stocks which Plaintiffs have alleged to have taken place.  *Id*. at 9–10.  Plaintiffs argue that the MMPA's SAR disclosure requirements reflect Congressional intent "to give the public a right to . . . information" including the marine mammal's range, population, and trend; a description of the commercial fisheries that interact with the stock; the annual

1    mortality and serious injury caused by commercial fisheries and other impacts; and the potential

2    biological removal level.  *Id*. at 9.

3          Plaintiffs also argue that the Service's failure to follow the required procedure to review

4    the SARs annually or triennially and make revised SARs available for public comment amounts to

5    a procedural injury which impairs Plaintiff's rights and interested in protecting the stocks at issue

6    in "two major ways: (1) it prevents Plaintiffs' input or participation in developing new SARs and

7    (2) it forecloses the chance for current, sufficient SARs to guide management decision that will

8    better protect the species, which affects Plaintiff's concrete interests in studying, viewing them,

9    and otherwise appreciating them in the wild." *Id*. at 11.  Plaintiffs contend that they need not

10   prove any downstream effect on marine mammals in order to assert these procedural interests.  *Id*.

11   at 8–9, 11 (citing *Mendoza v. Perez*, 754 F.3d 1002, 1012–13 (D.C. Cir. 2014) (holding that a

12   plaintiff asserting injury to procedural rights need not prove that a different outcome would have

13   occurred if the procedure had been completed)).

14         Plaintiffs ask the Court to reject Defendants' view that no procedural or informational

15   rights arise until Defendant publish a draft revised SAR, arguing that it would create a perverse

16   incentive to never begin the process of revision.  *Id*. at 10.  Plaintiffs contend that Defendants'

17   argument "asks this Court to impermissibly disregard Plaintiff's factual allegations and improperly

18   prejudge the merits of this case." *Id*.

19         Plaintiffs argue that they have suffered three specific informational and procedural injuries:

20   (1) Plaintiffs and their members are deprived of the information in updated SARs to comment on

21   and advocate for wildlife protections in the context of other government action, like the ongoing

22   open comment period on Arctic drilling activities; (2) Plaintiffs and their members are deprived of

23   the chance "to participate in the public comment process" for SARs themselves, where they

24   regularly provide comment when SAR are actually published; and (3) Plaintiffs' work towards the

25   protection of marine mammals from bycatch in fisheries is hampered because accurate SARs serve

26   as a basis for plans to reduce bycatch.  *Id*. at 12–13.

27                          b.    Causation

28         Plaintiffs assert that their theory of "causation is simple: outdated SARs mean that

12

management decisions for those marine mammals are misinformed and may lead to population declines, thereby harming Plaintiffs' interests in" the species at issue. *Id*. at 13. Plaintiffs contend that they have alleged several concrete examples of such reliance, including the use of SARs to guide management of fisheries, oil and gas extraction, military activities, and the like. *Id*. at 14. Plaintiffs contend that "although the causal chain is much shorter than Defendants assert, causation may be found even if there are multiple links in the chain," provided that those links are "'not hypothetical or tenuous' and remain 'plausible,'" and even if defendant was not "'the sole source'" of the injury, with the test for Article III standing being "'less rigorous than proximate causation.'" *Id*. at 14–15 (quoting *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002); *Barnum Timber Co. v. U.S. EPA*, 633 F.3d 894, 901 (9th Cir. 2011); *Isabel v. Reagan*, 394 F. Supp. 3d 966, 973 (D. Ariz. 2019)). Plaintiffs argue that they meet that standard, particularly because a showing of procedural injury reduces their burden to show causation. *Id*. at 15 (citing *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008)).

c.     Redressability

Plaintiffs also argue they sufficiently pleaded the third element of standing, that the alleged injuries are redressable through the relief sought, because compelling Defendants to revise the SARS would reduce the likelihood of future excessive take authorizations and provide Plaintiffs with the information and opportunity to comment they seek. *Id*. at 16. Plaintiffs argue that declaratory relief would have a practical effect similar to an injunction. *See id*. at 17. As with causation, Plaintiffs contend that the standard for pleading redressability is relaxed for procedural injuries. *Id*. at 16–17.

## 2.    **Arguments Regarding Failure to State a Claim**

Plaintiffs argue they have properly alleged facts establishing a claim under Rule 8(a) of the Federal Rules of Civil Procedure by detailing the Service's failure to fulfill its nondiscretionary duty to review and revise marine mammal stock assessment reports in light of the alleged changes to the stock and indications that the stock can be more accurately determined. *Id*. at 17. Plaintiffs contend they have identified two discrete actions the Service failed to do in violation of its mandatory duties under the MMPA: the review and revision of the stock assessment reports. *Id*. at

United States District Court
Northern District of California

1   17–18 (citing *United States v. Monsanto*, 491 U.S. 600, 607 (1989), for the proposition that the

2   word "shall" in a statute imposes a mandatory duty).

3           Plaintiffs argue that Defendants' focus on their obligations to revise the SARs and ignore

4   that Plaintiffs allege the Service has failed to both periodically *review* the SARs and publish

5   revised SARs for the stocks at issue.  *Id*.  Plaintiffs also contend that the Service must have

6   violated its duty to review the SARs in light of allegations that the status of all the stocks have

7   changed, specifically that "'[n]ew population estimates suggest that the Pacific walrus population

8   is declining' and its sea ice habitat is melting"; "'[t]he status of southwest, southcentral, and

9   southwest Alaska northern sea otter stocks has changed since the last [SAR] in 2014'" based on

10  new information about threats to their viability; and "'the status of manatee stocks has changed

11  since 2014' [given that] hundreds of manatees died in watercraft collisions in 2019 and 2020."  *Id*.

12  at 18–19 (quoting Compl. ¶¶ 42, 45, 46) (some alterations in original).  Plaintiffs assert that the

13  MMPA need not set a specific deadline for SAR revisions in order to create a nondiscretionary

14  duty.  *Id*. at 19 (citing *In re A Community Voice*, 878 F.3d 779, 784 (9th Cir. 2017); *Earth Island*

15  *Inst. v. Wheeler*, 464 F. Supp. 3d 1138, 1145–46 (N.D. Cal. 2020).

16          **E.    Defendants' Reply**

17                  **1.    Arguments Regarding Standing**

18          Defendants assert that "Plaintiffs have misconstrued Defendants' motion as brought

19  entirely under [Rule] 12(b)(6)," and contend that even though they "did not explicitly state that

20  their standing challenge is brought under Rule 12(b)(1), their intent to challenge constitutional

21  standing as a threshold jurisdictional issue is evident," and that even if they had not challenged

22  standing, "this Court has the authority and responsibility to examine jurisdictional issues at any

23  time."  *Id*. at 2–3 (citing Fed. R. Civ. P. 12(h)(3)).  Defendants contend that Plaintiffs have not

24  established injury in fact sufficient for Article III standing because they fail to allege "such a

25  personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court

26  jurisdiction."  *Id*. at 3 (citing *Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009)).

27          As to representational standing, Defendants argue that Plaintiffs' allegations regarding the

28  injury to the interests of their members are "implausible and not factual," and fail to support the

United States District Court
Northern District of California

inference of "an actual or imminent harm that is traceable to the challenged failure to act."  *Id*. at 4.

Turning to informational injury, Defendants acknowledge that a plaintiff can establish such harm "when they are denied information to which they would otherwise be entitled under the pertinent statute," but argue that "Congress gave the Service wide discretion" as to whether to publish revised SARs, and did not grant any public right to information or comment regarding annual or triennial SAR *reviews*.  *Id*. at 1, 6.  Defendants note that where the Service "determines. . . that a SAR does not need to be revised," as it has done here for the six stocks that remain at issue, "no publication requirement is triggered."  *Id*. at 6–7.  Defendants argue that the MMPA is distinct from statutes created primarily to ensure public access to information since the provision at issue here is intended primarily "to inform agency management of incidental taking of marine mammals in the course of commercial fishing operations."  *Id*. at 7–8.

Defendants argue that "the primary missing element from Plaintiffs' procedural standing argument is a concrete interest that is affected by the alleged deprivation."  *Id*.  Defendants contend that a procedural violation alone, without concrete harm, is insufficient to create Article III standing.  *Id*. (citing *Summers v. Earth Island Inst*., 555 U.S. 488, 496 (2009)).  Defendants argue that Plaintiffs' allegation that they suffered injuries "tied to their inability to participate in the public comment process" in which they regularly participate is circular and disallowed by precedent in *Summers*, and that Plaintiffs fail to allege any additional specific or concrete injuries resulting from the challenged agency inaction.  *Id*. at 9–10.  As with informational injury, Defendants argue that the "procedural right to notice and comment is only triggered if the Service determines revision is warranted and publishes a draft revised SAR in the Federal Register," which it has not so determined the six stocks still at issue.  *Id*. at 10.

Additionally, Defendants contend that the MMPA does not require the Service to use the potential biological removal levels gathered through SARs in determining the negligible impacts of permitted activities, which negates the allegation that Plaintiffs suffer a concrete injury in the form of misinformed negligible impact levels.  *Id*. at 11–12 & n.6 (citing Taking Marine Mammals Incidental to Geophysical Surveys Related to Oil and Gas Activities in the Gulf of

United States District Court
Northern District of California

Mexico, 86 Fed. Reg. 5322, 5346–47 (Jan. 19, 2021) (explaining in response to a public comment why population abundance estimates in a SAR were not the best available scientific information for the circumstances)).  Defendants add that SARs do not set sustainable levels of mortality for marine mammals, nor are they required to serve as "the sole sources of information in any particular application, management decision, or take regulation," but rather that the SARs' primary use is to "inform agency management of incidental take of marine mammals in the course of commercial fishing operations."  *Id*. at 1 (footnote omitted).

## 2.    Arguments Regarding Failure to State a Claim

Defendants contend that Plaintiffs fail to state a claim upon which relief can be granted because, with respect to the duty to *review* rather than *revise* SARs, "Plaintiffs have not and cannot allege more than conclusory statements that are unable to survive a motion to dismiss."  *Id*. at 12.  With respect to *revision* of the SARs, Defendant argue that Plaintiffs have not stated a claim for the six SARs where Defendants have not conceded changed status.  *Id*.  Defendants reiterate that the MMPA does not require the Service to publish its annual or triennial SAR reviews with the public, and contend that "Plaintiffs have no way of knowing whether their allegations are true" but rely instead "on pessimistic assumptions with no proof beyond 'threadbare recitals' of the MMPA's requirement."  *Id*. at 13 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Defendants argue that Plaintiffs' claim that the Service has not conducted mandatory reviews is simply a "legal conclusion couched as a factual allegation" that the Court is not required to accept, and that Plaintiffs' view that revisions to the SARs are required is based on an assumption that "Plaintiffs' knowledge of the best available scientific information is superior to the Service's knowledge."  *Id*. at 13–14.  According to Defendants, the only relief the Court could award is requiring "the Service to perform its mandatory reviews of the six SARs and reconsider whether revisions are warranted, which is not the relief that Plaintiffs' Complaint seeks."  *Id*. at 14.

## III.    ANALYSIS

### A.    Legal Standard

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

for failure to state a claim on which relief can be granted.  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Challenges to Article III standing are properly raised as asserting a lack of subject matter jurisdiction under Rule 12(b)(1)—which Defendants failed to cite in their motion—rather than failure to state a claim under Rule 12(b)(6). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). But where a defendant brings a facial challenge to subject matter jurisdiction, meaning a challenge

United States District Court
Northern District of California

1    based solely on the allegations in the complaint, courts conduct an inquiry that is "analogous to a

2    12(b)(6) motion." *Roberts v. Corrothers*, 812 F.2d 1173, 1178 (9th Cir. 1987).  Defendants' error

3    in initially citing the wrong rule for their arguments regarding standing therefore does not

4    meaningfully alter the Court's analysis.[3]

5        **B.    Constitutional Standing**

6        Establishing Constitutional standing requires "[1] that plaintiff[s] have suffered an injury

7    in fact, which is an invasion of a legally protected interest which is concrete and particularized and

8    actual or imminent rather than conjectural or hypothetical; [2] that there be a causal connection

9    between the injury and conduct complained of so that the injury is fairly traceable to the

10   challenged action of the defendant and not the result of the independent action of some third party

11   who is not before the court; and [3] that it be likely, as opposed to merely speculative, that injury

12   will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561

13   (1992).

14       **1.    Injury in Fact**

15       To fulfill the first element, a "plaintiff must show that [they are] under threat of suffering

16   'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not

17   conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 1149 (2009).  At the

18   pleading stage, Plaintiffs may sufficiently allege a future injury if it is certainly impending or there

19   is a substantial risk of its occurrence based on the general factual allegations of injury.  *Lujan,* 504

20   U.S. at 561; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).  To establish standing

21   on behalf of its members, an organizational plaintiff must allege that "(1) its members would

22   otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane

23   to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires

24   _____

25   [3] While the error is not material to the outcome, Defendants' assertion in their reply that "Plaintiffs
     have misconstrued Defendants' motion as entirely brought under Fed. R. Civ. P. 12(b)(6)," Reply

26   at 3, when the motion explicitly purports to be brought under Rule 12(b)(6) and never cites Rule
     12(b)(1), is a dubious attempt to shift the blame for Defendants' error to Plaintiffs.  Moreover,

27   Defendants' accusation, *see id.*, that Plaintiffs have improperly sought to limit the scope of the
     Court's review by focusing on Rule 12(b)(6)—the only rule cited in Defendants' motion—rings

28   hollow when Defendants have not identified any meaningful difference in the standard of review
     for a facial challenge to subject matter jurisdiction under Rule 12(b)(1).

the participation in the lawsuit of each of the individual members." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 333 (1977).

In *Summers*, the Supreme Court found that—after the parties settled their dispute as to the only specific project at issue—the plaintiffs did not have standing based on their alleged procedural injuries resulting from their inability to file comments on the Forest Service's action exempting certain projects from environmental impact statement ("EIS") requirements, despite having the right to by statute, because the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496 (citing *Lujan*, 504 U.S. at 572). In *Citizens for Better Forestry*, however, the Ninth Circuit held that "an environmental plaintiff was 'surely . . . harmed [when agency action] precluded the kind of public comment and participation [that the National Environmental Protection Act] requires in the EIS process,'" because EIS findings informed the regulation of national forests in which the plaintiffs had alleged sufficient interests in through their use and enjoyment. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 971 (9th Cir. 2003) (quoting *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920 n.14 (9th Cir. 2000)).[4] The *Citizens* court further held "that this type of 'procedural' injury is tied to a substantive 'harm to the environment'—'the harm consists of added risk to the environment that takes place when governmental decisionmakers make up their minds [about the permissibility of a forest management plan] without having before them an analysis (with public comment) of the likely effects of their decision on the environment,'" undermining the statutes purpose to "minimize . . . the risk of uninformed choice.'" *Id*. (quoting *West*, 206 F.3d at 930 n.14). The Ninth Circuit held that the plaintiffs did not need to assert that any specific injury *would* occur in the future because the "'asserted injury is that environmental consequences *might* be overlooked' as a result of deficiencies in the government's analysis under environmental statutes." *Id*. at 971–972 (citation omitted) (emphasis added). Unlike in *Summers*, the parties in the *Citizens* case had not settled any disputes regarding particular projects or areas where the plaintiffs had an interest.

---

[4] *Citizens* remains good law. *See, e.g.*, *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1013 (9th Cir. 2021).

United States District Court
Northern District of California

1       The *Ecological Rights* court rejected the district court's strict injury in fact rule, which was

2   based on the proximity of plaintiffs' places of residence to the affected waterway and the

3   frequency of plaintiffs' use of the waterway, and instead emphasized that the "'injury in fact'

4   requirement in environmental cases is not . . . reducible to inflexible, judicially mandated time or

5   distance guidelines, as *Laidlaw* makes clear." *Ecological Rights Foundation v. Pacific Lumber*

6   *Co.*, 230 F.3d 1141, 1148 (9th Cir. 2000) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*,

7   528 U.S. 167 (2000)).  Indeed, the *Laidlaw* court simply states that "environmental plaintiffs

8   adequately allege injury in fact when they aver that they use the affected area and are persons 'for

9   whom the aesthetic and recreational values of the area will be lessened' by the challenged

10  activity.'" *Laidlaw*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972).

11      Here, Plaintiffs have sufficiently alleged that they have representational standing based on

12  their lack of information, lack of opportunity to comment, and potential downstream effects

13  Defendants' failure to revise SARs for the remaining species at issue.  Compl. at 10–12.  This

14  mirrors the procedural violation which established plaintiff's standing in *Citizens*, wherein

15  plaintiffs were deprived of the opportunity to be informed of and comment on environmental

16  assessments despite their right to do so under NEPA's implementing regulation.  *Citizens*, 341

17  F.3d at 970.  Plaintiffs have sufficiently pleaded that they suffered concrete injuries, and will

18  continue to suffer future injuries, as a result of the Service's failure to comply with mandated

19  procedure when they allege that without up to date stock reports, Plaintiffs and their members

20  cannot use information that would have been in the reports in furtherance of their organizational

21  and professional interests; participate in the public comment process; or comment on and advocate

22  for conservation measures—an activity central to their organizational missions—to the extent they

23  otherwise would; and management decisions critical to a healthy environment will be misinformed

24  and/or less protective.  Compl. at 4–5.  Plaintiffs' injuries are unlike those alleged by the plaintiffs

25  in *Summers*, which were insufficiently concrete to establish standing because they were based on a

26  threat of injury which no longer existed since the plaintiffs had voluntarily settled a separate

27  lawsuit contesting the development of the affected forest region, and because plaintiffs "failed to

28  establish that any member has concrete plans to visit a site where challenged regulations are being

United States District Court
Northern District of California

20

applied in a manner that will harm that member's concrete interests." *Summers*, 555 U.S. at 1149. In contrast, Plaintiffs here face an ongoing threat of injury because they have alleged their intent to continue the recreational and professional activities which rely on the health of the stocks at issue. Plaintiffs' injuries are more akin to those in *Citizens*, which were based on the plaintiffs' use of the affected forest areas in which they held aesthetic and recreational value, and the risk that those forest areas would be harmed by misinformed forest management decisions. *Citizens*, 341 F.3d at 971. Here, Plaintiffs' injuries are based in similar interests in the marine mammals and habitats at issue, and the risk that the Service's failure to review or revise SARs might influence the management decisions intended to protect those marine mammals. Opp'n at 16.

Whether Defendants were required by statute to revise these SARs is a separate question going to the merits. For the purpose of constitutional standing, Plaintiffs have sufficiently alleged injury in fact.

### 2.        Causation

Plaintiffs also sufficiently allege the causation element of Constitutional standing with regard to these stocks. Defendants argue that the Plaintiffs do not adequately allege causation because they "fail to identify any specific management decision that relies on information in SARs, nor any specific activity, that, if permitted, may adversely affect the survival and recovery of the species." Mot. at 15. Additionally, Defendants argue that the injuries Plaintiffs allege are dependent upon future, discretionary management "decisions which are not challenged and cannot be addressed by this lawsuit." *Id*. The Court disagrees.

To sufficiently allege causation, plaintiffs must show that their injury is "fairly traceable to the challenged action of the defendant." *Summers*, 555 U.S. at 1149. Plaintiffs are not required to "establish causation with the degree of certainty that would be required . . . to succeed on the merits, say, of a tort claim," but instead must establish the "reasonable probability" that the challenged actions pose a threat to Plaintiffs' concrete interests. *Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2001). That said, causation cannot rest on an overly "attenuated chain of conjecture" or "be too speculative, or rely on conjecture about the behavior of other parties." *See id*.; *Ecological Rts.*, 230 F.3d at 1152. "The issue in the causation inquiry is whether the alleged injury can be

traced to the defendant's challenged conduct, rather than to that of some other actor not before the court." *Ecological Rts.*, 230 F.3d at 1152.

Here, Plaintiffs allege that the failure to timely review and revise stock assessment reports directly causes Plaintiffs' information and procedural injury because without an updated, published SAR, Plaintiffs are unable to view and comment on information to which they would otherwise be entitled to view and comment, related to marine mammals and habitats in which they have specific interests and with which their members regularly interact. Compl. at 5. Plaintiffs also allege that the Service's failure to keep stock assessment reports up to date directly increases the likelihood that management decisions such as the authorization of take levels, will be misinformed and as a result, less protective of the marine mammals in which they have recreational, conservational, and professional interests. *Id.* at 4–5. Viewing these allegations in the light most favorable to Plaintiffs, it is reasonably probable that the Service's alleged failure to comply with its reporting requirements will cause fairly traceable harm to Plaintiffs' interests because those reporting requirements are intended to aid efforts to conserve and protect the marine mammal stocks at issue under 16 U.S.C. Chapter 31, Subchapter II—Conservation and Protection of Marine Mammals. This link between Defendants' alleged failure to act and Plaintiffs' injuries is akin to the link sufficiently alleged in *Ecological Rights*, where plaintiffs alleged that their recreational waterway use and enjoyment would be impaired due to the risk of pollutant runoff from the challenged upstream development. 230 F.3d at 1151. Plaintiffs' theory of causation passes the *Ecological Rights* test insofar as it is the inaction and subsequent management decisions of the named Defendants which would allegedly produce Plaintiffs' injuries, rather than the speculative actions of a third party. *Id.* at 1152. This causal chain is unlike that alleged in *American Petroleum*, in which the plaintiffs failed to show causation because their injury "relied on speculation that particular facilities [who were not parties to the lawsuit] would actually introduce the pollutants into the air." *Id.* (citing *Am. Petroleum Inst. v. U.S. EPA*, 216 F.3d 50, 66–68 (D.C. Cir. 2000)). While the causal chain between the failure to revise SARs and actual harm to marine mammals is somewhat more attenuated than causation of Plaintiffs' inability to review and comment on updated SARs, "the causal connection put forward for standing purposes

1    . . . need not be so airtight at this stage of the litigation."  *Id.*

2           Thus, Plaintiffs sufficiently establish a reasonably traceable, plausible link between the

3    Service's failure to revise SARs for the stocks at issue and Plaintiffs' resulting representational,

4    procedural, informational injuries.

5                              **3.    Redressability**

6           As to redressability, Defendants argue that "Plaintiffs have not sufficiently alleged that the

7    relief they request is 'likely, as opposed to merely speculative' to redress any of their alleged

8    injuries" or that "that the Court has the legal ability to grant the requested remedy to compel

9    revised SARs by a date certain for six of the nine stocks."  Mot. at 6.

10          To do sufficiently allege redressability, plaintiffs must allege that their injuries are likely

11   redressable by a favorable judicial decision.  *Juliana v. United States*, 947 F.3d 1159, 1168 (9th

12   Cir. 2020) (citing *Laidlaw,* 528 U.S. at 180–81).  For cases in which procedural injuries are at

13   issue, the redressability element is relaxed.  *WildEarth Guardians v. USDA*, 795 F.3d 1148, 1154

14   (9th Cir. 2015) (citing *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 485 (9th Cir.

15   2011)).  As a result, plaintiffs with procedural injuries do not need to show, for redressability

16   purposes, that compliance with the procedure at issue allowing the plaintiffs to exercise their

17   procedural rights would necessarily protect their concrete interests, but only that it *could* do so.

18   *Id.* (citing *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008));

19   *see also Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. 2001).  The Ninth Circuit has

20   held, for example, that ordering the Government to "discharge a statutory procedural requirement

21   . . . [where it] has failed to do so . . . can remedy the defect."  *Ctr. for Biological Diversity v.*

22   *Mattis*, 868 F.3d 803, 819 (9th Cir. 2009).  The *Mattis* court also found that the issuance of

23   declaratory relief in procedural injury cases can provide redress, as it would "impose a legal

24   obligation on the Government because a procedural requirement would stand unfulfilled," and

25   distinguishes that factual scenario from one in which plaintiff seeks a declaration stating that

26   particular aspects of a statute are unconstitutional.  *Id.* (distinguishing *Mayfield v. United States*,

27   599 F.3d 964, 966 (9th Cir. 2010), on the grounds that the plaintiff there did not assert a

28   procedural claim and had bargained away any right to injunctive relief in a prior settlement, and

United States District Court
Northern District of California

1   that the declaratory judgment sought would not have imposed any legal obligation on the

2   defendant).

3          Here, Plaintiffs seek an order to compel the Service to revise stock assessment reports for

4   all of the species at issue.  Compl. at 15.  Compliance with the order sought by Plaintiffs is fairly

5   likely to redress Plaintiffs' injuries because it would both provide them with the up-to-date

6   information they are currently deprived of and allow them to comment on, participate in, and

7   advocate for particular conservation outcomes using that information; as well as better inform the

8   Service's future management decisions such that the likelihood of excessive takes will be reduced.

9   *Id.*  This is similar to the relief sought in *Mattis*, where plaintiffs successfully established

10  redressability by seeking compliance with a statute which requires the Government to account for

11  the environmental effects of the construction of a replacement military based prior to its

12  construction, because such compliance had the potential to influence the outcome of the project

13  and potentially mitigate environmental harms.  *Mattis*, 868 F.3d at 818–820.  In contrast, the

14  *Salmon Spawning* plaintiffs unsuccessfully sought compliance with a statute aimed at ensuring

15  that the United States does not enter treaties which jeopardize protected species *after* the treaty

16  had already been joined, which meant that even if the court "rule[d] in [the plaintiffs'] favor, they

17  will still suffer injury because [the court] cannot undo the Treaty."  *Salmon Spawning & Recovery*

18  *All. v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008).

19         Defendants argue, without citation to authority, that such an order falls outside the Court's

20  power to grant because the "Court cannot order the Service to accept Plaintiffs' information as the

21  best available scientific information nor compel the Service to make revisions where the Service

22  has not determined that revisions are warranted."  Reply at 14; *see* Mot. at 16.  Unlike unmaking a

23  treaty, which falls outside the scope of a federal court's constitutional authority, ordering a

24  government agency to complete a report is the sort of relief courts frequently award under the

25  APA, and fails squarely within the power of the judiciary.  Whether such relief is warranted here

26  under the terms of the MMPA is a different question, but that goes to the merits of Plaintiffs'

27  claim, not their constitutional standing to pursue it.

28         Moreover, contrary to Defendants' arguments, the MMPA imposes a mandatory

24

requirement to issue revised SARs under at least some circumstances.  16 U.S.C. § 1386(c)(2) ("If

the review . . . indicates that the status of the stock has changed or can be more accurately

determined, the Secretary *shall* revise the stock assessment . . . ."); *see W. Va. Highlands

Conservancy v. Norton*, 190 F. Supp. 2d 859, 866 (S.D.W. Va. 2002) ("When a statute or

regulation uses the word 'shall,' a mandatory duty is imposed upon the subject of the command."

(citing *Monsanto*, 491 U.S. at 607)).  Any failure to allege or prove that those circumstances are

satisfied here is, again, a question of the merits, not Article III standing.  *See Mattis*, 868 F.3d at

818 ("If the Government has reached its conclusions about effects and mitigation after a sound

NHPA Section 402 process, then it has complied with NHPA Section 402; the claim fails not for

lack of standing but on the merits.").

Plaintiffs also request the issuance of declaratory relief stating "that the Service is in

violation of its non-discretionary duties and that its failure to review and revise the stock

assessment reports . . . within the timeframe the MMPA dictates constitutes agency action that is

unreasonably delayed and/or unlawfully withheld or arbitrary, capricious, or otherwise not in

accordance with the law."  Compl. at 15.  As noted above, in cases in which procedural injuries

are at issue and a government actor is the defendant, declaratory relief can be sufficient to redress

Plaintiffs' injuries.  *Mattis*, 868 F.3d at 820.  Here, like in *Mattis*, a declaration that Defendants

were required to publish revised SARs "*would* impose a legal obligation on the Government

because a procedural requirement would stand unfulfilled."  *Id.*

\* \* \*

For the reasons discussed above, Plaintiffs have sufficiently alleged the injury in fact,

causation, and redressability elements of Article III standing.

**C.     Plaintiffs Have Not Sufficiently Alleged a Violation**

Although the Court is satisfied that Plaintiffs have sufficiently alleged standing, they have

not sufficiently alleged a violation of Defendants' duties under the MMPA.  As discussed above,

the MMPA requires the Service to review stock assessments on an annual or triennial basis, and to

revise SARs when those periodic reviews "indicate[] that the status of the stock has changed or

can be more accurately determined."  16 U.S.C. § 1386(c).  It also sets certain requirements for the

25

United States District Court
Northern District of California

1  manner in which those reviews and revisions are conducted, including that they involve "volunteer

2  "scientific review groups" and consider "the best scientific information available."  *See generally*

3  16 U.S.C. § 1386.

4        Plaintiffs assert that Defendants failed to complete the required periodic reviews, but aside

5  from a number of passing references that refer to that failure as an assumed fact—*e.g.*, Compl.

6  ¶ 51 ("The Service's failure to timely review . . . the stock assessment reports . . . violates section

7  117(c) of the MMPA.")—the only allegation that Defendants failed to do so appears as a brief,

8  unexplained assertion in the "Parties" section of the complaint, lumped together with the alleged

9  failure to revise the SARs, and not identifying which particular reviews should have been

10  completed but were not.  *Id.* ¶ 20 ("The Service has failed to review and revise stock assessment

11  reports for sea otter, polar bear, walrus, and manatee stocks.").  This sort of conclusory assertion,

12  unsupported by factual allegations, does not rise to the level of plausibility required by *Iqbal*,

13  particularly when the reviews at issue are conducted internally and it is not clear how Plaintiffs

14  might have reached the conclusion that Defendants did not conduct them.  To the extent Plaintiffs'

15  claim rests on a theory that Defendants failed to conduct annual or triennial reviews for any of the

16  stocks at issue, it is therefore DISMISSED with leave to amend.[5]

17        Plaintiffs more clearly allege that Defendants have not recently *revised* the SARs for the

18  six stocks that remain at issue, an issue Defendants do not dispute.  Plaintiffs have not, however,

19  clearly alleged that the statutory conditions imposing a duty to revise those SARs were met.

20  Instead, Plaintiffs allege that the status of the stocks has in fact changed.  Complaint at 10–13.

21  These alleged changes range from threats to the animals' habitat—credited to the issuance of oil

22  and gas leases and seismic surveys in all at-issue sea otters' habitats; the impacts of fishing on sea

23  otter mortality and food availability; and climate-change induced changes to the sea otters', Pacific

24  walrus', and manatees' habitat and food availability—to changes in the population estimates for

25  the Pacific walrus stock and increased mortality of manatees due to watercraft activities.  *Id.*

26

27  [5] In their briefs and at the hearing, Defendants asserted that the periodic reviews have been
    completed.  Plaintiffs' counsel did not indicate at the hearing that they intended to pursue a claim

28  based on failure to complete those reviews.  The Court nevertheless grants leave to amend in an
    abundance of caution.

However, because the Service is only required to create a revised SAR "if [its internal review] indicates that the status of the stock has changed or can be more accurately determined,"—rather than if and whenever the status of any given stock has changed in fact, as Plaintiffs allege— Plaintiffs' complaint falls short of alleging that the Service has failed to perform a nondiscretionary duty under the MMPA. 16 U.S.C. § 1386(c)(2) (specifying the Service's non-discretionary duties to review stocks on an annual or triennial basis and to create and publish revised reports as needed).  The closest Plaintiffs come to meeting that standard is their allegation that the "Service is aware, or should be aware, that the statuses of these marine mammal stocks have changed or can be more accurately determined," Compl. ¶ 40, but even if taken as true, that allegation does not establish that Defendants actually determined from their periodic reviews that the status had changed and revisions were required, or that Defendants failed to complete those periodic reviews in the manner required by the statute.

It is at least conceivable that Plaintiffs could plausibly allege that Defendants actually concluded either that the status of some or all of these stocks had changed or that the status could more accurately be determined.  *See* 16 U.S.C. § 1386(c)(2).  It is also conceivable, perhaps in the alternative, that Plaintiffs could allege facts supporting a plausible conclusion that Defendants failed to carry out their periodic reviews in the manner required by the statute, such as by failing to consider the best available science.  The current complaint does not do so.  Defendants' motion is therefore GRANTED, and the complaint is DISMISSED with leave to amend.

## IV.   CONCLUSION

For the reasons above, Defendants' motion to dismiss is GRANTED.  If Plaintiffs believe they can cure the defects addressed above regarding the stocks for which the Service has not published revised SARs, they may file an amended complaint no later than November 5, 2021.

**IT IS SO ORDERED.**

Dated: October 20, 2021

JOSEPH C. SPERO
Chief Magistrate Judge